**HOUSTON OILERS, INC., Appellant,**

**v.**

**Donald Wayne FLOYD, Appellee.**

**No. 16415.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 16, 1975.

Rehearing Denied Feb. 13, 1975.

Caldwell & Hurst, Ernest C. Hurst, John H. Caldwell, Houston, for appellant.

James H. Campbell, Houston, for appellee.

EVANS, Justice.

This action was brought by Donald Wayne Floyd, a professional football player, against Houston Oilers, Inc. to recover the sum of $14,240.00 which he asserted was the balance of his salary due under his player's contract. Floyd alleged that he had suffered an injury to his right ankle on August 23, 1968 which prevented his performing further service as a football player under his contract; that after being examined by the team physician he was carried on the club's injured reserve list until September 30, 1968, when he was returned to the active player list by the team trainer; that about two days later, October 2, 1968, he was notified that his contract was being terminated and that he would receive no further salary, and that such actions constituted a breach of his player's contract. Houston Oilers, Inc. generally denied these allegations and specially alleged that Floyd had failed to comply with a contractual provision whereby he was to submit himself for examination to a physician of his choice within 72 hours after the decision of the club physician that he was physically able to return to the active player list, and also that he was barred from recovery by reason of a general release of liability which he and his attorney had signed in connection with the settlement of his claim for workman's compensation.

In response to special issues, the jury found that as a result of the injury on August 23, 1968 Floyd was physically disabled from playing football from that date through December 16, 1968 (the end of the regular football season). The jury failed to find that Floyd had intended to release the Houston Oilers from their obligations arising out of their salary contract with him. The court found, among other facts, that Floyd had been restored to the active player roster on September 30, 1968 and terminated on October 2, 1968; that he had fully performed the terms of the salary contract and that the Houston Oilers had breached the contract in failing to pay his salary. The court further found that the contract called for a total salary of $19,000.00 payable at the end of the football season on December 15, 1968; that Floyd had been paid $6,178.00, and the Houston Oilers should be given credit for the $1400.00 workman's compensation payment he had received. It awarded judgment to Floyd in the amount of $11,422.00 with interest at the legal rate from date of judgment.

In its first three points of error, the Houston Oilers assert that the trial court erred in allowing parol evidence of Floyd's intent in signing the release, in submitting an issue to the jury on such matter, and in failing to enforce the release as a bar to Floyd's cause of action.

The agreed judgment entered in Floyd's prior action against the workman's compensation carrier, Standard Insurance Company, awarded Floyd $1120.00 for his injuries and disability, including medical expenses to the date of judgment and $280.00 for medical aid, hospital services, nursing, chiropractic services, medicines, doctor bills and prosthetic appliance expenses which might be incurred by him in the future. The judgment clearly shows that Floyd's suit was to recover workman's compensation benefits for the injury sustained by him on August 23, 1968. The Houston Oilers were not a named party to the suit although they are named in the judgment as Floyd's employer at the time of the injury. The day prior to the date of the judgment, Floyd and his attorney executed a general release whereby they acknowledged receipt of the payment of the

sum of $1400.00 and, reciting a consideration of the insurance company's agreement to the entry of said judgment, released and discharged National Standard Insurance Company and Houston Oilers, Inc.

"of and from any and all claims, controversies, actions or causes of action of whatever nature arising out of and resulting from the alleged injury and accident of August 23, 1968 and of and from any and all claims, controversies, demands, actions, or causes of action for liability for medical aid, hospital services, nursing, chiropractic services and medical expenses, past, present and future."

■■ In order to ascertain and give effect to the true intention of the parties to the release, it is appropriate that we construe the release in the light of the facts and surrounding circumstances as shown by the record. Loy v. Kuykendall, 347 S.W.2d 726, 728 (Tex.Civ.App.—San Antonio 1961, writ ref., n. r. e.). When the language of the release is considered together with the recitations showing the nature of the settlement and the payments made under the agreed judgment in the workman's compensation case, it is clear that the release was given to cover the subject matter of that litigation. The release purports only to release those claims and causes of action which Floyd might have had "arising out of and resulting from" his injury and accident of August 23, 1968. The fact that Floyd's injury may have preceded and perhaps have influenced the Houston Oilers' decision to terminate his services under the contract, does not require the conclusion that his claim for salary benefits under the contract is an integral part of his claim to workman's compensation benefits due to his physical injury. The facts of this case present an entirely different situation than that evidenced in Rough v. Southwestern Bell Telephone Co., 426 S.W.2d 579 (Tex.Civ. App.—Dallas 1968, writ ref.). In that case the employee specifically released all claims and causes of action "arising out of his employment," including claims for "employee benefits." Also in that case, the settlement check contained an endorsement on the back which purported to release not only the employee's claims on account of the injury but also "all causes of action whether or not they grew out of said alleged injury."

We hold, as a matter of law, that the release does not constitute a bar to this action. We further hold that in the event there is any ambiguity in the terms of the release, that question has been determined against the Houston Oilers' contention by the jury's failure to find that Floyd intended to release the Oilers from their obligations arising out of the contract. Although the Houston Oilers argue that the issue was not submitted in proper form and failed to inquire as to the ultimate issue in the case, it failed to properly apprise the court of that objection. We overrule Houston Oilers' first three points of error.

■ In its remaining four points of error, Houston Oilers, Inc. asserts that the trial court erred in entering judgment for Floyd because the record conclusively establishes that Floyd failed to comply with a condition precedent to his recovery as found in paragraph 14 of his player's contract.

Paragraph 14 of the player's contract with the club provides as follows:

"In the event that Player is injured in the performance of his services under this contract, and if Player gives written notice to the Club Physician of such injury within thirty-six (36) hours of its occurrence, the Club will: (1) provide, during the term of this contract, such medical or hospital care as, in the opinion of the Club Physician, may be necessary; and (2) continue, during the term of this contract, to pay Player his salary as provided in § 3 or § 10 hereof, whichever is applicable if and so long as it is the opinion of the Club Physician that Player, because of such injury, is unable to perform the services required of him by this contract; Player, may, within

seventy-two (72) hours after his examination by the Club Physician, submit at his own expense to an examination by a physician of his choice. If the opinion of such physician with respect to Player's physical ability to render the services required of him by this contract is contrary to that of the Club Physician, the dispute shall be submitted to a disinterested physician to be selected by the Club Physician and Player's physician or, if they are unable to agree, by the Commissioner, and the opinion of such disinterested physician shall be conclusive and binding upon the Player and the Club. Except as provided in this paragraph, Player's failure for any reason whatsoever to perform this contract or the services required of him by this contract, or his failure to comply with: the Joint Constitution; or the Constitution and By-Laws, Rules and Regulations of the League, or of the Club, or of any league of which the Club may hereafter become a member, shall entitle the club, at its option, to terminate such contract, such termination to be effective when the Club sends to the Player written notice of such termination, or shall entitle the Club at its option to terminate Player's salary under this contract. The Player's death shall automatically terminate this contract. The rights of termination set forth in this paragraph shall be in addition to the rights of termination set forth in § 6 hereof, and any other rights of termination allowed by law.

"If Player is injured in the performance of his services under this contract, this contract shall remain in full force and effect despite the fact that Player, following injury, is either carried by the Club on its Reserve List or is waived out as an injured player while injured; when such Player is, in the opinion of the Club Physician, again physically able to perform his services under this contract, the Club shall have the right to activate such Player, and Player shall be obligated to perform his services hereunder in accordance with the terms hereof."

Under this provision, the parties agreed the contract would remain in effect and the player would be entitled to his stipulated salary for the contract term despite his inability to perform active service by reason of physical injury. If the club's physician certified the injured player able to perform active service, the player might, within 72 hours after such determination, have an examination made by his own physician. In the event of disagreement between the two physicians, a third, disinterested physician was to be selected by the two, and if they were unable to agree, selection was to be made by the Commissioner.

The evidence does not establish whether the club doctor was of the opinion that Floyd was physically able to perform services under the contract. The record shows only that Floyd was advised by the club trainer that he had been placed on the active player list. Floyd testified that the only reason given him by the club trainer for being reactivated was "that he had no choice other than to put me back on, because it was from higher up to reactivate me." It further appears from the evidence and the trial court's finding, against which no attack has been made, that Floyd's services were terminated less than seventy-two hours after he was restored to the active player roster. The evidence does not show that he was given the period of time specified in the contract to have an examination made by a physician of his own choice, even if he had decided to take that course of action.

We hold that the evidence does not establish as a matter of law that Floyd failed to comply with the provisions of the contract, as contended by the Houston Oilers, and we overrule appellant's points of error four through seven.

The judgment of the trial court is affirmed.