Jerry W. SMITH, Appellant,

v.

GOLDEN TRIANGLE
RACEWAY, Appellee.

No. 09–85–200 CV.

Court of Appeals of Texas,
Beaumont.

April 10, 1986.

Rehearing Denied May 7, 1986.

Michael McGown, Weller, Wheelus &
Green, Beaumont, for appellant.

Thomas Walston, Mehaffy, Weber, Keith
& Gonsoulin, Beaumont, for appellee.

## OPINION

BURGESS, Justice.

Jerry Smith was injured while in the "pit
area" of Golden Triangle Raceway. He
filed suit alleging both negligence and
gross negligence. Golden Triangle Race-
way filed a motion for summary judgment
based upon a release signed by Mr. Smith.
The motion was granted.

Mr. Smith's affidavit filed in response to
the motion for summary judgment, in rele-
vant portion, stated:

"4. I viewed the race from the infield
area located in the center of the race-
track. To gain access into the infield
area I signed a form and was provided a
piece of paper with the words "pit pass"
which was stapled to my shirt.

"5. I was told that a list of people enter-
ing in the pit area was necessary and I
thus signed my name and my brothers
name to the list provided by Golden Tri-
angle Raceway. To the best of my recol-
lection there was no writing on the list

nor was I told that each person had to sign individually.

"6. At no time was I told by anyone, be they an employee of Golden Triangle Raceway or anyone else, that the purpose of placing my signature on the list was to waive any and all rights I might have against Golden Triangle Raceway if I were injured at the racetrack.

"7. The only representations made to me in regard to placing my signature on the list was that my signature was necessary to show who had entered into the pit area with no further explanation."

■ Mr. Smith's first point of error alleges there is a fact issue raised as to whether or not the release clearly notified him of its effect. Mr. Smith cites several cases from other jurisdictions which hold that releases of this type must be clear and must inform the signer of the effect of the instrument. The release in question provides in pertinent part:

"IN CONSIDERATION of being permitted to enter for any purpose any RESTRICTED AREA (hereinafter defined as including but not limited to the ... pit areas, infield, burn out area, approach area, shutdown area ... and other areas of appurtenant to any area where any activity related to the event shall take place), or being permitted to ... observe, work for, or for any purpose participate in any way in the event, EACH OF THE UNDERSIGNED, for himself, ...:

"1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoter, ... track operator, track owner, ... owners and lessees of premises used to conduct the event and each of them, their officers and employees, all for the purposes herein referred to as "releasees", from all liability to the undersigned ... for any and all loss or damage, and any claims or demands therefor on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releasees or otherwise while the undersigned is on or upon the restricted area and/or ...

observing, ... or for any purpose participating in the event;

"2. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the releasees and each of them from any loss, liability, damage, or cost that they may incur due to the presence of the undersigned in or upon the restricted area or in any way ... observing, ... or for any purpose participating in the event and whether caused by the negligence of the releasees or otherwise.

"3. HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of releasees or otherwise while in or upon the restricted area and/or while ... observing, ... or for any purpose participating in the event.

"EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage. EACH OF THE UNDERSIGNED further expressly agrees that the foregoing release, waiver and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the Province or State in which the event is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

"THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT, and further agrees that no oral representations, statements or inducements apart from the foregoing written agreement have been made.

"I HAVE READ THIS DOCUMENT. I UNDERSTAND IT IS A RELEASE OF ALL CLAIMS.

"I UNDERSTAND I ASSUME ALL RISK INHERENT IN RACING.

"I VOLUNTARILY SIGNED MY NAME EVIDENCING MY ACCEPTANCE OF THE ABOVE PROVISIONS."

A release of this type has been held not to be against the public policy of this state. *Corpus Christi Speedway v. Morton,* 279 S.W.2d 903 (Tex.Civ.App.—San Antonio 1955, no writ). While the release here is not totally in "every day language" nor is it totally "legalese". We hold, as a matter of law, the release clearly communicated its effect to the signer. Point of error number one is overruled.

Point of error number two alleges a fact issue exists concerning whether or not Mr. Smith was given an opportunity to read the release and whether or not the import of the release was misrepresented to him.

■ The only evidence before the court was Mr. Smith's deposition and his affidavit. Neither of these raise any fact issue against Golden Triangle Raceway. True, there are allegations of misrepresentation, but they are not directed against any one person in particular and especially not anyone connected with Golden Triangle Raceway. An affidavit opposing a motion for summary judgment must contain specific factual allegations which are direct and unequivocal. *Brownlee v. Brownlee,* 665 S.W.2d 111 (Tex.1984). This point of error is overruled.

■ The next point of error alleges the trial court erred because there was a fact issue as to the validity of the release based upon the great disparity of the bargaining position of the parties. Mr. Smith cites no Texas case on this point. This simply was not a "bargaining" situation. Mr. Smith was under no compulsion to go into the pit area. There are no public policy considerations under which this could be construed as a "bargaining" situation. As previously noted, these types of releases are not against public policy, *Corpus Christi Raceway, supra.* This point of error is overruled.

The final point of error alleges the trial court erred in granting summary judgment because the release cannot relieve Golden Triangle Raceway from liability or damages occasioned by their own gross negligence. We find no cases from our jurisdic-

tion on this point. However, several other jurisdictions have adopted such a rule. *Lee v. Beauchene,* 337 N.W.2d 827 (S.D.1983), *Seymour v. New Bremen Speedway, Inc.,* 31 Ohio App.2d 141, 287 N.E.2d 111 (1971), *Winterstein v. Wilcom,* 16 Md.App. 130, 293 A.2d 821 (1981), *Barker v. Colorado Region-Sports Car Club of America, Inc.,* 532 P.2d 372 (Colo.App.1974), *Thomas v. Atlantic Coast Line R.R. Co.,* 201 F.2d 167 (5th Cir.1953), *Wade v. Watson,* 527 F.Supp. 1049 (N.D.Ga.1981), *aff'd,* 731 F.2d 890 (11th Cir.1984).

Several recognized treatises adopt such a rule. The RESTATEMENT OF CONTRACTS SEC. 574 (1932) states:

> "A bargain for exemption from liability for the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm, is legal except in cases stated in sec. 575."

The comment goes on to state:

> "... By gross negligence is meant conduct falling greatly below that standard."

The RESTATEMENT (SECOND) OF CONTRACTS SEC. 195 (1979) states:

> "A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy...."

See also, 6A CORBIN, *CONTRACTS* SEC. 1472 (1962) and W. PROSSER, *TORTS,* SEC. 68 (4th Ed.1971).

■ The rule adopted by the other jurisdictions and supported by the treatises should be the rule in Texas. We hold a term in a release attempting to exempt one from liability or damages occasioned by gross negligence is against public policy. We sustain point of error number three.

The case is remanded for a trial only on the issue of gross negligence and the actual and punitive damages attributable to such gross negligence, if any.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.