Abney Lee NEWMAN, Individually & James Daniel Newman, Individually And As Executor of the Estate of Jean Hunter Newman, Appellants,

v.

TROPICAL VISIONS, INC. d/b/a Tropical Divers & Bob Lake, Individually And In His Capacity as Divemaster and/or As An Employee of Tropical Visions, Inc., Appellees.

No. 04–93–00671–CV.

Court of Appeals of Texas, San Antonio.

Nov. 30, 1994.

Rehearing Denied Dec. 30, 1994.

Carl J. Kolb, Carl J. Kolb, P.C., San Antonio, for appellants.

Rebecca S. Matthews, Gammon & Matthews, Houston, for appellees.

Before CHAPA, C.J., and BUTTS and RICKHOFF, JJ.

## OPINION

RICKHOFF, Justice.

At issue in this wrongful death and survival action is the effectiveness of a pre-injury liability release. The case arises from the death of Jean Hunter Newman on May 6,

1990, during completion of a scuba certification course at Lake Travis. Appellants, Abney Lee Newman, individually, and James Daniel Newman, individually and as the executor of the estate of Jean Hunter Newman, appeal a summary judgment rendered in favor of appellees, Tropical Visions, Inc., d/b/a Tropical Divers, and Bob Lake. We affirm the judgment in part, and reverse and remand it in part.

### BACKGROUND

On January 2, 1990 Jean Newman enrolled in an "open water" scuba certification course—purchased by her son—at the defendants' place of business. On January 29, 1990, prior to the first class, she signed (1) an enrollment application, (2) a "Statement of Understanding for Skin and Scuba Diving," (3) a medical statement, (4) a "Standard Safe Diving Practices Statement of Understanding," and (5) an "Affirmation and Liability Release."

The last document, entitled "PADI [Professional Association of Diving Instructors] Affirmation and Liability Release," reads as follows:

PADI AFFIRMATION AND
LIABILITY RELEASE

(read carefully before signing)

I, (1) *Jean Newman,* hereby affirm that I have been well advised and thoroughly informed of the inherent hazards of skin and scuba diving.

Further, I understand that diving with compressed air involves certain risks, and injuries can occur that require treatment in a recompression chamber. I further understand that the open water diving trips, which are necessary for training and for certification, may be conducted at a site that is remote, either by time or distance or both, from such a recompression chamber, and nonetheless agree to proceed with such instructional dives. I hereby personally assume all risk in connection with said course for any harm injury, or damage that may befall me as a result of my participation in the course, whether fore-

seen or unforeseen, and I still wish to proceed with the course in spite of the possible absence of a recompression chamber in proximity of the site. I understand and agree that neither (2) *Tropical Divers/Bob Lake* located in the city of (3) *SAT* [sic] and state of *Tx* may be held liable in any way for any occurrence with this diving class that may result in injury, death, or other damages to me or my family, heirs, or assigns, and in consideration of being allowed to enroll in this course, I hereby personally assume all risks in connection with said course, for any harm, injury or damage that may befall me while I am enrolled as a student of the course, including all risks connected with therewith, whether foreseen or unforeseen; and further to save and hold harmless said program and persons from any claim by me, or my family, estate, heirs, or assigns, arising out of my enrollment and participation in this course.

I further state that I am of lawful age and legally competent to sign this affirmation and release, or that I have acquired the written consent of my parents or guardians; that I understand the terms herein are contractual and not a mere recital; and that I have signed this document of my own free act.

It is the intention of (1) *Jean Newman* by this instrument to exempt and release (2) *Tropical Divers/Bob Lake* from all liability whatsoever for personal injury, property damage or wrongful death caused by negligence.

I HAVE FULLY INFORMED MYSELF OF THE CONTENTS OF THIS AFFIRMATION AND RELEASE BY READING IT BEFORE I SIGNED IT.

Beneath this last line appears the signature and address of Jean Newman. The form also asked her age, which is listed on the document as "65".

Plaintiffs sued for negligence, gross negligence, and violations of the Deceptive Trade Practices Act ("DTPA"). Defendants moved for summary judgment based upon the defenses of release and "consent/express assumption of the risk." Their summary judgment proof included the documents mentioned above and an affidavit from Bob Lake, Newman's diving instructor. Plaintiffs filed a written response but offered no summary judgment evidence of their own. On July 7, 1993, the trial court granted the defendants' motion, concluding:

> 1) Decedent Jean Newman executed a valid release on or about January 29, 1990; 2) This release specifically named the defendants as parties released by Decedent Jean Newman for any harm, injury or damage, including death, that might befall Ms. Newman during participation in the course. 3) The release was clear and unambiguous. 4) The release bars plaintiffs' causes of action in the above-entitled and numbered cause. 5) There exists no genuine issue of material fact as to any element of Defendants' affirmative defense of release. 6) Decedent Jean Newman voluntarily executed a document by which she expressly consented to her participation in the scuba course and expressly assumed the risks associated therewith, which risks Ms. Newman knew included injury and/or death. 7) The express consent and assumption of the risks of scuba diving executed by Ms. Newman bars Plaintiffs' causes of action in the above-entitled and numbered case. 8) There exists [sic] no genuine issue of material fact as to any element of Defendants' affirmative defense of consent/express assumption of the risk.

The court denied plaintiffs' motion for a new trial. They perfected this appeal, asserting nine points of error.

## DISCUSSION

As a general rule, the movant for summary judgment has the burden of showing there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). In deciding whether there is a disputed material fact issue precluding summary judgment, we take evidence favorable to the nonmovant as true. *Id.* We also indulge every reasonable inference in favor of the nonmovant and resolve doubts in his or her favor. *Id.*

■ A defendant moving for summary judgment must either (1) disprove at least one of the elements of each of the plaintiff's causes of action, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's causes of action. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Liggett v. Blocher,* 849 S.W.2d 846, 850 (Tex. App.—Houston [1st Dist.] 1993, no writ).

■ Once a movant has established a right to a summary judgment, the burden shifts to the nonmovant. *Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex. 1979). The nonmovant must then respond to the motion and present the trial court with any issues that would preclude summary judgment. *Id.*

■ Because the summary judgment order expressly states the grounds on which it was granted, we are precluded from determining any other ground when reviewing that summary judgment. *S.S. v. State Farm Fire and Casualty Co.,* 808 S.W.2d 668, 672 (Tex.App.—Austin 1991, writ denied).

Appellees moved for and were granted summary judgment on the basis of (1) release and (2) "consent/express assumption of the risk." Appellants' first and second points of error claim the summary judgment evidence fails to conclusively establish these defenses. The third point of error claims there are genuine issues of material fact concerning whether the release was understood to consent to, or intended to exonerate defendants from the consequences of their own negligent acts or omissions.

■ Both parties cite *Williams v. Glash,* 789 S.W.2d 261 (Tex.1990) as potentially dispositive. In *Williams,* a woman was involved in an automobile accident, after which both she and her insurance company initially believed there were no physical injuries. The insurer gave her a check for the exact amount of her property damage. There was a release on the back of the settlement check, which provided the payee accepted the payment in full settlement of all claims for property damages and for "bodily injury whether known or unknown." When the woman later discovered she suffered from temporomandibular joint ("TMJ") syndrome, she sought to avoid the effects of the release. The trial court granted the insurer's motion for summary judgment, but the supreme court reversed. The court explained that under Texas law, a release is a contract and subject to avoidance on grounds such as fraud or mistake, like any other contract. *Id.* at 264. The court went on to note that:

... whether the parties to a release intended to cover an unknown injury cannot always be determined exclusively from the language of the release itself. It may require consideration of the conduct of the parties and the information available to them at the time of signing. *In a subsequent suit for an unknown injury, once the affirmative defense of release has been pleaded and proved, the burden of proof is on the party seeking to avoid the release to establish mutual mistake.*

*Id.* (Emphasis added). This is consistent with general rules of summary judgment. For example,

... issues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence.

*McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993); *see also* Tex.R.Civ.P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal"). Because the plaintiffs failed to raise any issues to avoid the release in their response to the motion for summary judgment, they waived those issues. The only question is whether the defendants properly plead and proved an affirmative defense.

■■ In addition to pleading an affirmative defense of release, appellees also moved for summary judgment on the basis of what they called "consent/express assumption of the risk." Although assumption of the risk was once an affirmative defense in tort cases, the Texas Supreme Court has abolished it in ordinary negligence actions. *Farley v. M.M.*

*Cattle Co.*, 529 S.W.2d 751, 758 (Tex.1975). The factfinder in a negligence action now determines the reasonableness of an actor's conduct in confronting a risk by using comparative responsibility principles. TEX.CIV. PRAC. & REM.CODE ANN. § 33.001–.016 (Vernon 1986 and Supp.1991); *Farley,* 529 S.W.2d at 758; *Connell v. Payne,* 814 S.W.2d 486, 488 (Tex.App.—Dallas 1991, writ denied). Assumption of the risk remains viable only in cases involving "a knowing and express oral or written consent to the dangerous activity or condition." *Farley,* 529 S.W.2d at 758; *Connell,* 814 S.W.2d at 488.

However, no Texas court—according to our research—has yet defined what constitutes a "knowing and express consent." Several recent cases have applied an assumption of the risk analysis to injuries inflicted during competitive contact sports. In *Connell v. Payne,* for example, the plaintiff sued for injuries inflicted by an opponent during a polo match. After noting that "[a]ll parties agree polo is a dangerous game," the court observed:

> No Texas court has decided the issue of the legal duty owed by one participant to another participant in a *competitive contact sport* ... By participating in a dangerous *contact sport* such as polo, a person assumes a risk of injury.... A participant in a competitive contact sport *expressly consents to and assumes the risk of* the dangerous activity by voluntarily participating in the sport. We hold that for a plaintiff to prevail in a cause of action for injuries sustained while participating in a competitive contact sport, the plaintiff must prove the defendant acted "recklessly" or intentionally" ...

*Connell,* 814 S.W.2d at 488–89 (Emphasis added).

In *Hathaway v. Tascosa Country Club, Inc.,* 846 S.W.2d 614 (Tex.App.—Amarillo 1993, no writ), the court extended this reasoning to the game of golf, holding that golfers assume the risk of being struck by balls hit by other golfers, and thus may recover from another golfer only if the other golfer acted recklessly or intentionally. *Id.* at 616–17. The court concluded, "Acts that would be negligent if performed on a city street or in a backyard are not negligent in the context of a game where a risk of inadvertent harm is built into the sport." *Id.*

In *Bangert v. Shaffner,* 848 S.W.2d 353 (Tex.App.—Austin 1993, writ denied), the plaintiff was injured in a parasailing accident. He sued the owner of the parasail, arguing he was negligent in failing to instruct or supervise the operation of the parasail. Affirming a judgment in favor of the plaintiff, the court distinguished *Connell,* concluding it "clearly addressed the legal duty participants owe one another while engaging in a competitive contact sport." *Id.* at 355. Because it was undisputed that parasailing was not a contact sport, the court declined "to adopt the reckless disregard standard for *every* recreational activity or sport that might be considered dangerous." *Id.* at 356 (Emphasis in original).

Unlike *Connell, Hathaway,* or *Bangert,* however, in this case there was a written agreement under which Newman purported to "personally assume all risks in connection with said course, for any harm, injury of damage that may befall me while I am enrolled as a student of the course, including all risks connected therewith, whether foreseen or unforeseen ..." It is language such as this which apparently forms the basis for appellees' argument that Newman expressly consented to and assumed the risks of her participation in the scuba course, thus barring her causes of action. Indeed,

> [i]t is quite possible for the parties expressly to agree in advance that the defendant is under no obligation of care for the benefit of the plaintiff, and shall not be liable for the consequences of conduct which would otherwise be negligent. There is in the ordinary case no public policy which prevents the parties from contracting as they see fit, as to whether the plaintiff will undertake the responsibility of looking out for himself.

W. PAGE KEETON, ET AL., THE LAW OF TORTS § 68, at 480–81 (5th ed. 1984) (Hereafter "PROSSER & KEETON"). The Second Restatement of Torts reaches a similar conclusion:

> A plaintiff who by contract or otherwise expressly agrees to accept a risk of harm arising from the defendant's negligent or

reckless conduct cannot recover for such harm, unless the agreement is invalid as contrary to public policy.

RESTATEMENT (SECOND) OF TORTS § 496B (1965).

While there are no Texas cases discussing the requirements of a "knowing and express" assumption of the risk, it is settled that:

> In order to effectively release a claim in Texas, the releasing instrument must 'mention' the claim to be released. Even if the claims exist when the release is executed, any claims not clearly within the subject matter of the release are not discharged. *Vela v. Pennzoil Producing Co.*, 723 S.W.2d 199, 204 (Tex.App.—San Antonio 1986, writ ref'd n.r.e). *See Baker v. City of Fort Worth*, 146 Tex. 600, 210 S.W.2d 564, 567–68 (1948); *Houston Oilers, Inc. v. Floyd*, 518 S.W.2d 836, 838 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). Furthermore, general categorical release clauses are narrowly construed. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex.1984).

*Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex.1991). These general rules apply equally well to a knowing or express assumption of the risk.

Several treatises provide further guidance. "If a defendant seeks to use the agreement to escape responsibility for the consequences of his negligence, then it must so provide, clearly and unequivocally, as by using the word 'negligence.' " PROSSER & KEETON § 68, at 484. Moreover,

> [m]any courts, for instance, have held in effect that a clause will not be construed to include an exemption for negligence unless it does so in the clearest terms, as by using the word *negligence*, or language so broad and sweeping that it must be taken to have given fair notice that it includes negligence.

FOWLER V. HARPER, ET AL., THE LAW OF TORTS § 21.6, at 251 (2d ed. 1984) (Emphasis in original).

▪ Although the precise words "assumption of the risk" are not used in the agreement, it is clear from the language of the document that Mrs. Newman intended to do just that. It specifically states it was her intent to relieve the defendants from "all liability ... caused by negligence." It would be difficult to imagine language more clearly designed to put a layperson on notice of its legal significance and effect. We therefore hold that under the agreement Newman effectively assumed all of the risks of any injury she might suffer as a result of the defendants' negligence during the scuba training course. The third point of error is overruled. We reserve ruling on appellants' first and second points of error, however, until we have addressed their eighth and ninth points of error, which concern their DTPA claim.

Appellants' fourth point of error argues that the affidavit of Bob Lake, "not being one which could be readily controverted in any of the material areas of inquiry, was not competent summary judgment proof, and there was no other proof."

▪ In a summary judgment proceeding, the testimony of an interested witness usually creates a fact issue as to his credibility. *Winkler v. Kirkwood Atrium Office Park*, 816 S.W.2d 111, 114 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Goodman v. Gallerano*, 695 S.W.2d 286, 288 (Tex. App.—Dallas 1985, no writ). Rule 166a, however, provides an exception to this general rule:

> A summary judgment may be based on uncontroverted testimonial evidence of an interested witness ... if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

TEX.R.CIV.P. 166a(c). A summary judgment can therefore be based on the testimony of an interested witness if these conditions are satisfied. *Winkler*, 816 S.W.2d at 114.

▪ Lake's affidavit makes no specific allegations concerning anything that was said to Mrs. Newman about the documents she signed, or what she may, or may not, have understood. Instead it claims simply that he "went over these documents, their significance and effect in detail with the class." He adds that "[n]o student was compelled to sign

the documents and could have received a refund of the cost of the course if they had chosen not to participate."

Citing *Winkler*, appellants argue that since Newman is deceased, Lake's testimony "cannot be readily controverted." In *Winkler*, however, the court concluded that an affidavit from Shalala, a defendant in the case, "[a]lthough detailed and potentially persuasive . . . could not have been readily controverted since Winkler, the only other party present at the meeting described, is deceased." *Id.* at 114.

The issue in this case is whether Lake told Newman and the other students in the class what he claims to have told them, i.e., that he allowed them to ask questions about the documents they received and that they read and understood them. It is undisputed that all the students in the class received the same documents for their inspection and signature. Far from being uncontrovertible, such allegations could have been "readily controverted" by another person in the class. Plaintiffs failed to do. The fourth point of error is overruled.

▄▄▄ Appellants' fifth point of error claims the release or "express consent" is ambiguous.[1] Appellants, however, failed to plead ambiguity in their petition and failed to raise it in their response to the defendants' motion for summary judgment. They accordingly waived the issue, *see* TEX.R.CIV.P. 166a(c), and the point is overruled.

Appellants' sixth point of error argues that the release or consent failed to conform to the so-called "express negligence" rule.

The "express negligence" doctrine is one of two fair notice requirements which govern releases and indemnity provisions; the other is "conspicuousness." *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993). Either requirement, however, can be waived if it is not brought to the attention of the trial court:

> Page [plaintiff] never pleaded not submitted jury questions on fair notice. However, it did argue that the provisions in both the Dresser [defendant] contract and the Houston Fishing [defendant] contract did not comply with the fair notice requirements *in responses to motions for summary judgment, directed verdict, and instructed verdict.* It also urged the lack of compliance with the fair notice requirements to the court of appeals and to this Court. Thus, Page *has not waived* the argument that these exculpatory provisions did not meet the fair notice requirements . . .

*Id.* at 510 (Emphasis added). This is consistent with the rules which govern summary judgment. *See* TEX.R.CIV.P. 166a(c); *McConnell*, 858 S.W.2d at 343.

Appellants failed to plead the express negligence rule in their petition, and they did not raise it in their response to the motion for summary judgment. Appellees therefore argue the issue of whether the release complied with the fair notice requirement was waived by appellants' failure to bring it to the attention of the trial court prior to entry of summary judgment. We agree. The point is overruled.

Appellant's seventh point of error claims the trial court could not grant summary judgment on the plaintiffs' claim for "gross negligence" because a release is ineffective, as a matter of law, for such a claim.

Appellants cite *Smith v. Golden Triangle Raceway*, 708 S.W.2d 574 (Tex.App.—Beaumont 1986, no writ), which held that a liability release signed by a spectator who wanted access to the pit area at a race track could not waive the right to sue for damages caused by gross negligence. *Id.* at 576. The court cited the RESTATEMENT (SECOND) OF

---

1. We noted previously that a release is a contract, like any other. In a situation where a written release uses language and wording which can be given a certain and definite legal meaning or interpretation, the release is not ambiguous. *Pecorino v. Raymark Industries, Inc.*, 763 S.W.2d 561, 574 (Tex.App.—Beaumont 1988, no writ) (citing *Alba Tool & Supply v. Industrial Contractors*, 585 S.W.2d 662 (Tex.1979)). A genuine, meaningful uncertainty and ambiguity must exist to render a contract ambiguous, and for a contract to be ambiguous, there must exist a genuine and meaningful uncertainty as to which one of two or more meanings or interpretations is proper. *Pecorino*, 763 S.W.2d at 574 (citing *R. & P. Enterprises v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517 (Tex.1980)).

CONTRACTS § 195 (1979), which says, "A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy." *Id.* It remanded the case for trial "on the issue of gross negligence and the actual and punitive damages attributable to such gross negligence, if any." *Id.*

Because Mrs. Newman's death occurred in 1990, the issue of gross negligence would be governed by the 1987 "tort reform" legislation. *See* Acts 1987, 70th Leg., 1st C.S., ch. 2, § 4.05(a) (legislation applies to suits filed on or about September 2, 1987). This legislation modified the common law definition of gross negligence:

> 'Gross Negligence' means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want or care as to establish that the *act or omission* was the result of actual conscious indifference to the rights, safety, or welfare of the person affected.

TEX.CIV.PRAC. & REM.CODE ANN. § 41.001(5) (Vernon Supp.1994). (Emphasis added).

■■■■ "Gross negligence thus involves two components: (1) the defendant's act or omission, and (2) the defendant's mental state." *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21 (Tex.1994). As legislatively defined, the act or omission must involve behavior that endangers the "rights, safety or welfare of the person affected." TEX.CIV. PRAC. & REM.CODE ANN. § 41.001(5) (Vernon Supp.1994). Gross negligence therefore differs from ordinary negligence in that a grossly negligent defendant must be "consciously indifferent," and his or her conduct must "create an extreme degree of risk." *Id.* (quoting *Williams v. Steves Industries, Inc.,* 699 S.W.2d 570, 573 (Tex.1985)); *see also Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 326 (Tex.1993) ("We affirm that a gross negligence finding may be upheld on appeal only if there is [legally sufficient] evidence that a) the defendant's conduct created an extreme risk of harm, and b) the defendant was aware of the extreme risk").

■■■■ Gross negligence may be tried and determined separately from negligence, as in actions brought under the worker's compensation statute for exemplary damages. *See Wright v. Gifford–Hill & Co., Inc.,* 725 S.W.2d 712 (Tex.1987). It also may be a separable issue which can be determined upon a limited remand of a proceeding, as held by the court of appeals in *Olin Corp. v. Dyson,* 678 S.W.2d 650, 659 (Tex.App.—Houston [14th Dist.] 1984), *rev'd on other grounds,* 692 S.W.2d 456 (1985). *Smith v. Golden,* however, seems to go much further, suggesting that gross negligence and ordinary negligence are two different causes of action.

■■■■ While we recognize that gross negligence unquestionably involves a different character of conduct, no exact line can be drawn between negligence and gross negligence. *Williams,* 699 S.W.2d at 573; *Trevino v. Lightning Laydown, Inc.,* 782 S.W.2d 946, 949 (Tex.App.—Austin 1990, writ denied). The difference between the two forms of negligence is one of degree rather than kind. *Trevino,* 782 S.W.2d at 949. In other words, negligence that proximately causes actual damage to the plaintiff justifies an award of actual damages. When, however, a defendant's indifference to a given risk rises to the level of conscious indifference, that negligence becomes gross negligence and justifies an award of punitive damages. What lifts ordinary negligence into gross negligence is the defendant's mental attitude. *Moriel,* 879 S.W.2d at 20 (citing *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (Tex. 1981)).

■■■■ Moreover, the determination of gross negligence is relevant only to an assessment of exemplary damages. *Trevino,* 782 S.W.2d at 949. We have previously noted that a plaintiff cannot recover exemplary damages until he or she proves an entitlement to actual damages. *Nationwide Mutual Ins. Co. v. Holmes,* 842 S.W.2d 335, 339 (Tex.App.—San Antonio 1992, writ denied). Indeed, "[t]he Texas cases are unanimous in holding that recovery of actual damages is prerequisite to receipt of exemplary damages." *Nabours v. Longview Savings and Loan Ass'n,* 700 S.W.2d 901, 903 (Tex.1985) (quoting *Doubleday & Co., Inc. v. Rogers,* 674 S.W.2d 751, 754 (Tex.1984)). One need look no further than the Civil Practice and

Remedies Code to find a clear affirmation of this principle. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 41.004 (Vernon Supp.1994) ("Exemplary damages may be awarded only if damages other than nominal damages are awarded").

In *Trevino v. Lightning Laydown, Inc.,* the court also discussed an earlier decision by the Fourteenth Court of Appeals that is cited by the dissent, *Olin Corp. v. Dyson,* 678 S.W.2d 650 (Tex.App.—Houston [14th Dist.] 1984), *rev'd,* 692 S.W.2d 456 (Tex.1985). In *Dyson,* the Houston court stated that simple negligence and gross negligence constitute "two separable causes of action." *Id.* at 659. The court of appeals had held that the evidence was factually insufficient to support an exemplary damages award; the court remanded only the exemplary damage issue for a new trial.[2] In doing so, however, the court reasoned that "where the appellant has not challenged the jury's finding of ordinary negligence against it on appeal, it is particularly fair to remand solely on the issue of gross negligence." *Id.* (citing *Young v. Hicks,* 559 S.W.2d 343 (Tex.1977)).

■    This statement illustrates the controversy in the present case. It is beyond dispute that one cannot recover punitive damages until he or she first proves an entitlement to actual damages. In *Dyson,* unlike in this case, there could have been no argument about the plaintiff's entitlement to actual damages, since the court clearly noted that the appellant in that case was not attacking the jury's findings of "ordinary" negligence. *Id.* at 659. In this case, however, the plaintiff waived Tropical Vision's liability for negligence in the release.

■    Thus, even if we were to hold that gross negligence is a separate claim from simple negligence, and we do not, the absence of a viable negligence claim removes any justification for imposing actual damages. We accordingly hold the defendants satisfied their summary judgment burden of pleading and proving that the pre-injury release absolved them from liability for injuries

resulting from their negligence, and that—at least in the context of this case—negligence and gross negligence are not separable.

This holding is necessarily limited by our reliance on relevant summary judgment principles. We emphasize the plaintiffs failed to raise issues such as fraud, ambiguity, mistake, or more importantly, the "express negligence" rule in their response to the summary judgment motion; these issues were waived. We therefore do not address—and express no opinion on—whether a pre-injury release which exempts one from the consequence of his gross negligence violates public policy. We overrule appellant's seventh point of error.

■    Appellants' eighth point of error argues the trial court erred in dismissing the plaintiffs' DTPA claims because the summary judgment evidence fails to establish a waiver in conformity with the DTPA. Appellants' ninth point of error claims the court further erred because the evidence raises genuine issues of material fact regarding whether the release or express consent is "unconscionable" under the DTPA, and therefore void.

The DTPA expressly provides that a waiver by a consumer of the provisions of the DTPA is contrary to public policy and is unenforceable and void unless the defendant first pleads and proves:

(1) that the consumer is not in a significantly disparate bargaining position;

(2) that the consumer is represented by legal counsel in seeking or acquiring services or goods; and

(3) that the consumer has waived her rights under the DTPA by an express provision in a written contract signed by both consumer and the consumer's legal counsel.

TEX.BUS. & COMM.CODE ANN. § 17.42(a) (Vernon Supp.1994).

There is no summary judgment evidence to support any of these elements. It is important to note the defendants moved for and were granted summary judgment only on the basis of release and "consent/express as-

---

**2.** In reversing *Dyson* (concluding the court of appeals erred in its review of the jury's findings of gross negligence) the supreme court did not

address the issue of whether gross and ordinary negligence are two different causes of action.

sumption of the risk." The summary judgment evidence fails to sustain either defense, however, and we cannot determine the viability of other potential grounds for summary judgment, if any. The summary judgment must therefore be reversed as to the DTPA claim, and the issue remanded the trial court. *See* Tex.R.App.P. 81(1)(b). Because of this holding, we do not address appellant's ninth point of error.

Appellants' first, second and eighth points of error are sustained, in part. This cause is remanded for further proceedings consistent with this opinion, only as to appellant's DTPA claim. It will be for the trial court to determine the viability of this remaining claim. The remainder of the judgment is affirmed.

CHAPA, Chief Justice, concurring in part and dissenting in part.

I concur in the majority's opinion, with the exception of its holding that the release signed by Mrs. Newman waived Tropical Visions' liability for gross negligence as well as ordinary negligence. I would hold under existing Texas case law and as a matter of public policy that gross negligence cannot be waived. Furthermore, Appellees have failed to sustain their summary judgment burden as to gross negligence. We should therefore uphold Appellants' seventh point of error and remand Appellants' claim to the trial court for a determination on the issue of gross negligence.

### CAN GROSS NEGLIGENCE BE WAIVED?

The only case in Texas that has thus far addressed the issue of whether an express release can relieve a defendant from liability for damages occasioned by its own gross negligence unequivocally held that such a release is void as against public policy. In *Smith v. Golden Triangle Raceway*, 708 S.W.2d 574 (Tex.App.—Beaumont 1986, no writ), the plaintiff attended a motorcar race and signed a waiver to gain access to the infield. He was injured while in the "pit area" and filed suit on claims of both negligence and gross negligence. The waiver that he signed released the track owners and

operators "from all liability to the undersigned ... for any and all claims or demands therefor on account of injury to the person or property or resulting in death of the undersigned, *whether caused by the negligence of the releasees or otherwise....* I HAVE READ THIS DOCUMENT. I UNDERSTAND IT IS A RELEASE OF *ALL CLAIMS*." *Id.* at 575 (emphasis added). The raceway filed a motion for summary judgment based on the release signed by Mr. Smith, which was granted by the trial court. The court of appeals acknowledged that this was a case of first impression in Texas and cited several other jurisdictions that have adopted the rule that liability for gross negligence cannot be waived. The court concluded that public policy barred a waiver under such circumstances and cited section 195 of the *Restatement (Second) of Contracts*, which states: "A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy." Restatement (Second) of Contracts § 195 (1979). The court then remanded for a trial solely on the issue of gross negligence and the actual and punitive damages attributable to that gross negligence. *Id.* at 576.

*Smith* is directly on point. The release signed by Mrs. Newman was similar to that signed by Smith; in fact, Smith released "all claims," whether caused by "negligence or otherwise." The release signed by Mrs. Newman specifically released only "negligence." This court should follow *Smith* and hold that the release signed by Mrs. Newman did not waive gross negligence.

### GROSS NEGLIGENCE V. SIMPLE NEGLIGENCE

a. Are gross negligence and simple negligence separable issues?

The majority strains to find that the release signed by Mrs. Newman waived gross negligence as well as ordinary negligence. It does this by determining that gross negligence and negligence are not two different causes of action but, rather, "a difference of degree rather than kind." To arrive at this result, the majority dismisses *Smith* because it "*seems* to go much further, suggesting that

gross negligence and ordinary negligence are two different causes of action." *Supra* at 16 (emphasis added). In fact, the Fourteenth Court of Appeals in Houston has flatly stated: "[W]e believe negligence and gross negligence *to constitute two separable causes of action* as gross negligence requires proof of the mental attitude of the defendant and ordinary negligence does not and the means by which damages are assessed for each action is different." *Olin Corp. v. Dyson,* 678 S.W.2d 650, 659 (Tex.App.—Houston [14th Dist.] 1984), *rev'd on other grounds,* 692 S.W.2d 456 (Tex.1985). The Austin Court of Appeals in *Trevino v. Lightning Laydown, Inc.,* 782 S.W.2d 946 (Tex.App.—Austin 1990, writ denied), while disagreeing with *Dyson* that negligence and gross negligence form two separate causes of action, agreed that "gross negligence may be tried and determined separately from negligence, as in actions brought under the worker's compensation statute.... *It may also be a separable issue which properly may be determined upon limited remand of a proceeding.*" *Id.* at 950. (emphasis added). This court has acknowledged the split in authority as to whether gross negligence and simple negligence are separate causes of action. *See Metromedia Long Distance, Inc. v. Hughes,* 810 S.W.2d 494, 497 n. 10 (Tex. App.—San Antonio, 1991, writ denied).

While the Texas Supreme Court has yet to address directly the issue of whether an action for gross negligence such as that sought in the instant case may be determined separately from an action for negligence in a non-worker's-compensation case, its recent decision in *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10 (Tex.1994), is instructive. The court in *Moriel* declared that its decision "represents a substantial clarification of the gross negligence standard that will apply in all cases[.]" *Id.* at 13. After tracing the history of gross negligence in Texas jurisprudence, the court underscored that the Texas standard differs from most jurisdictions by requiring two elements: an objectively viewed act or omission and the actual, subjective awareness of the actor.

It should not be surprising, perhaps, that many efforts to analyze gross negligence findings confuse the defendant's mental state with the nature of the defendant's act or omission. The mental state involves awareness of the risk, and thus the two are interrelated. As Prosser and Keeton point out, most jurisdictions distinguishing gross from ordinary negligence have focused on either the difference in the defendant's mental state or the difference in riskiness of the defendant's act, but the two definitions have tended to merge and "*take on the same meaning, of an aggravated form of negligence....*" But this is not so in Texas. Ours is a "*hybrid definition, distinctive to this state ... combining both of the traditional tests for gross negligence.*"

*Id.* at 22 (emphasis added) (citations omitted).

The court concluded that the definition of gross negligence includes two elements:

(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Id.* at 23.

From the above passages, it is certain that in Texas gross negligence is more than merely "an aggravated form of negligence," and is sufficiently distinct and separable from simple negligence as to demand a separate determination.

b. Actual and exemplary damages

The majority emphasizes that Texas case law is clear that one cannot recover exemplary damages until he or she proves an entitlement to actual damages, and that the determination of gross negligence is therefore relevant only to an assessment of exemplary damages. Indeed, section 41.004 of Texas Civ.Prac. & Rem.Code Ann. states, "Exemplary damages may be awarded only if damages other than nominal damages are awarded." TEX.REV.CIV.STAT.ANN. § 41.004 (Vernon Supp.1994). However, nothing precludes an award of *actual* damages for gross negligence. *See, e.g., Smith v. Golden Triangle*

*Raceway,* 708 S.W.2d at 576 (remanding to trial court on issue of gross negligence and actual and punitive damages attributable to gross negligence); *Trevino v. Lightning Laydown, Inc.,* 782 S.W.2d at 949–50 ("Where the pleadings and evidence authorize an actual damage award, they may be awarded whether the actor was negligent or grossly negligent.") Thus, a jury finding of actual damages resulting from a grossly negligent act would serve as the predicate for possible exemplary damages in conformance with the statute.

Furthermore, while I agree that generally one cannot recover punitive damages until actual damages have been awarded, I believe that the law also allows exceptions in which an actual "recovery" of damages is not necessary. For example, the Beaumont Court of Appeals recently held that "when exemplary damages are sought under [article XVI, section 26 of the Texas Constitution], it is not necessary that actual damages be recoverable, they need only to exist." *Fuller v. Travelers Indem. Co.,* 874 S.W.2d 958, 961 (Tex. App.—Beaumont 1994, writ granted); *see* TEX.CONST. art. XVI, § 26 (awarding cause of action for exemplary damages to survivor of decedent killed through wilful act, omission, or gross negligence of another); *see also Nabours v. Longview Savings and Loan Ass'n,* 700 S.W.2d 901, 904 n. 3 (Tex.1985) (noting cases where punitive damages have been allowed incident to equitable relief where no actual damages were awarded). The majority in the instant case quotes *Nabours* for the proposition that "Texas cases are unanimous in holding that recovery of actual damages is prerequisite to receipt of exemplary damages." *Id.* at 903. After citing this general proposition, however, the *Nabours* court then asserted, "Even in cases where actual damages are *not recoverable,* it is still necessary to allege, prove and secure jury findings on the existence and amount of actual damage sufficient to support an award of punitive damages." *Id.* (emphasis in original); *see Fuller,* 874 S.W.2d at 961 (underscoring that important aspect of *Nabours* is acknowledgment that exemplary damages may be awarded in cases in which actual damages exist, regardless of whether actual damages are recoverable).

#### c. Worker's compensation allows recovery for gross negligence

The most visible instance in which a plaintiff is barred from recovering actual damages for negligence but can nevertheless recover exemplary damages is a survivor's claim for wrongful death due to gross negligence of the deceased's employer. TEX.LAB.CODE ANN. § 408.001 (Vernon Pamph.1994); *see Wright v. Gifford–Hill & Co.,* 725 S.W.2d 712, 714 (Tex.1987). In *Wright,* the supreme court approved the general rule that "in order to recover exemplary damages the plaintiff must show himself *entitled* to recover actual damages, and which he would recover but for the compensation act." *Id.* (citing *Ft. Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397 (1934)). Thus, worker's compensation in essence removes the question of ordinary negligence from the case. *Ghazali v. Southland Corp.* 669 S.W.2d 770, 773 (Tex. App.—San Antonio 1984, no writ).

It is evident that the situation in the instant case is analogous to a claim for gross negligence brought under the worker's compensation statute. *But for* the release which waived ordinary negligence, Appellants would be *entitled* to recover damages based on that negligence. The fact that they are barred by the signed waiver from pursuing a claim for monetary damages based on ordinary negligence should not bar them from pursuing their claim for damages based on gross negligence.

#### d. Public policy forbids waiver of gross negligence

Thus, as a matter of public policy, the legislature mandated that a gross negligence claim survives in the case of a worker's compensation claim. It is axiomatic that an employer should not be able to cause the death of an employee through wilful, wanton, or reckless behavior with impunity. *See Ghazali,* 669 S.W.2d at 774–75 (affirmance of summary judgment against worker's compensation claim for gross negligence "would be tantamount to [a] declaration that an employer could never be liable for the homicide of an employee killed in a robbery, that is, that the cause of action based on gross negligence does not exist"). Similarly, a provider of

services to the public should not be able to cause the death of a patron by an act or omission committed with a conscious indifference to that patron's safety with absolute impunity. *See* TEX.CONST. art. XVI, § 26 (person, corporation or company is liable for exemplary damages for homicide committed through wilful act, omission, or gross negligence).

A party who contracts to accept a risk of harm caused by another's negligent conduct cannot recover for such harm, *unless the contractual agreement is invalid as contrary to public policy.* RESTATEMENT (SECOND) OF TORTS § 496B (1965). Comment "d" to section 496B states: "General clauses exempting the defendant from all liability for negligence will not be construed to include ... extreme or unusual kinds of negligence, unless such intention clearly appears." *Id.* cmt. d. Thus, to hold that signing a general waiver of simple "negligence" forever bars one from pursuing a claim for gross negligence before an impartial trier of fact flies in the face of 4,000 years of law that stands for the proposition that exemplary damages play a "necessary role in preserving the public health and safety." *Moriel,* 879 S.W.2d 10, 47 (Doggett, J., concurring in part and dissenting in part); *see generally id.* at 36–47 (describing history and purposes of exemplary damages from Code of Hammurabi to present day). The majority in *Moriel* reiterated that punitive damages are levied against a defendant to punish him for "outrageous, malicious, or otherwise morally culpable conduct," and are levied for the public purposes of punishment and deterrence. *Id.* at 16–17.

That punitive damages are exempt from comparative negligence reduction is further evidence that our legislature and judicial system acknowledge the public policy value of the imposition of exemplary damages and, by extension, the very distinctive nature of gross negligence. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 33.002 (Vernon Supp.1994) (comparative responsibility chapter does not apply to exemplary damages based on negligence claim).

[I]t is incorrect to view the award of exemplary damages from the eyes of the recovering plaintiff; rather, the award should be viewed from the eyes of public policy. Second, if gross negligence, wanton conduct, or reckless disregard for the rights of others were a plain vanilla form of negligence, then comparative negligence would necessitate reduction in any damages. In Texas, however, while gross negligence has been defined in a myriad of ways, the distilled essence of those definitions is that ordinary negligence is not of the same ilk as gross negligence. Therefore, the two are not so analogous as to allow comparison for the purpose of reducing compensation.

*Anderson v. Trent,* 685 S.W.2d 712, 714 (Tex. App.—Dallas 1984, writ ref'd n.r.e.).

In sum, to hold that a waiver of the right to hold a party liable for mere negligence also releases the right to pursue a claim for gross negligence extinguishes the public policy rationale for allowing a gross negligence claim.

## SUMMARY JUDGMENT

The majority contends that the absence of a viable simple negligence claim satisfies the Appellees' burden of pleading and proving that the release absolves them from liability for injuries resulting from their gross negligence. In a claim for gross negligence, "[b]ecause of variations of the circumstances which may be shown at a trial on the merits, summary judgment is rarely justified[.]" *Lawrence v. TD Indus.* 730 S.W.2d 843, 845 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). As noted previously, gross negligence differs from ordinary negligence in that the defendant must be consciously indifferent, and his or her conduct must create an extreme degree of risk. *Moriel,* 879 S.W.2d at 23.

A defendant moving for summary judgment on the basis of an affirmative defense must establish that defense as a matter of law. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). The only evidence supporting Appellee's claim that the gross negligence claim is barred by an express assumption of the risk is the release document itself. As noted by the majority, in order to release a claim effectively, the instrument must at least mention the claim to be released. *See Victoria Bank & Trust Co.*

*v. Brady,* 811 S.W.2d 931, 938 (Tex.1991); *see generally supra* at 10 (discussing necessity of unequivocal language of waiver). Although the word "negligence" is used, the words "gross negligence" do not appear anywhere in the document, nor does the document discuss aggravating circumstances that could lead to a finding of gross negligence, such as wilful, wanton, or reckless conduct. The parties in this case identified the level of duty, the breach of which would be covered by the release—a breach of the duty of ordinary care. From the express language of the document and its plain meaning, the parties did not intend that the release would apply should the owner or operator act with conscious indifference. The agreement therefore contains no language that could be fairly construed to give notice that a claim for gross negligence would be barred. In other words, there is no basis for holding *as a matter of law* that Mrs. Newman assumed all of the risks of any injuries she might suffer as a result of Appellees' gross negligence. *See Lawrence v. TD Indus.* 730 S.W.2d at 845 (summary judgment reversed in gross negligence claim because issues of intent, knowledge, and state of mind are not susceptible to being readily controverted and are best left to the trier of fact).

Nor does an affirmative defense of release bar such a claim. The previous discussion is equally applicable here. Construing the document narrowly, as we must, *Victoria Bank,* 811 S.W.2d at 938, we would find that Appellees have failed to establish, as a matter of law, a defense of release as to the gross negligence claim.

## CONCLUSION

In summary, I believe that the majority errs by placing its reliance solely on the issues of whether gross negligence and simple negligence are completely "separate" causes of action and whether the absence of

recovery of "actual damages" based on negligence precludes a claim for gross negligence. I would hold that gross negligence is a distinct and separable issue which, on the basis of public policy, cannot be waived by a release of liability. Therefore, the gross negligence claim should be remanded to the trial court for determination in accordance with *Smith v. Golden Triangle Raceway.*[1] Furthermore, I would conclude that Appellees did not establish their affirmative defense to sustain the summary judgment as a matter of law on the issue of gross negligence.

---

1. To give effect to the waiver of ordinary negligence, the existence of such negligence would be determined by the trier of fact. If it were found that negligence occurred and damage resulted, the fact finder would determine the amount of actual damages based on ordinary negligence. The fact finder would then be required to make the appropriate determination as to whether gross negligence occurred, and the amount of any actual and exemplary damages resulting from gross negligence. The defendant would be absolved from the negligence finding and any resulting actual damages based on the signed release, and only the damages resulting from gross negligence would be assessed. Such a procedure would give effect to the intent of the parties in executing the release.