**ORANGE RICE MILLING COMPANY,**
Appellant,

v.

**SOUTHERN PACIFIC COMPANY,**
Appellee.

No. 7336.

Court of Civil Appeals of Texas,
Beaumont.

April 20, 1972.

Motion for Rehearing Overruled
May 11, 1972.

Orgain, Bell & Tucker, Beaumont, for appellant.

Mehaffey, Weber, Keith & Gonsoulin, Beaumont, for appellee.

DIES, Justice.

On November 1, 1966, H. W. Perry, a conductor for appellee, fell and was injured while spotting freight cars on spur tracks adjacent to appellant's plant. Thereafter he was paid in settlement of his claim $22,500 by appellant and another $22,500 by appellee. The Railroad brought this suit against the Rice Mill for recovery of the $22,500 it paid Perry. Appellant, Orange Rice Milling Company, will be referred to herein as "Rice Mill" and appellee, Southern Pacific Company, will be referred to as the "Railroad".

The case was submitted to a jury and the court entered judgment in favor of Railroad from which Rice Mill brings this appeal.

Article V of a contract binding the parties is as follows:

"The second party (Orange Rice Milling Company) agrees to indemnify and hold harmless the first party (the Railroad) for loss, damage or injury, from any act or omission of the second party, its employees or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation while on or about said trackage and if any claim or liability shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally."

The jury found that Rice Mill allowed debris and metal bands to accumulate on the premises which caused Perry's injuries; that this debris was there for a sufficient time for Rice Mill to know or should know of it, which was negligence and a proximate cause of Perry's injuries. They were asked if such negligence was the sole cause of the injuries to which they answered, "We do not."

The jury also found that Rice Mill had been requested by the Railroad not to allow the debris to accumulate, which request Rice Mill failed to heed. The jury found this to be negligence and a proximate cause of Perry's injuries, but they failed to find that it was the sole cause.

Rice Mill was also found to have the responsibility of cleaning up off the ground such debris as may have come from the cars. Rice Mill was found to have failed in this responsibility which was negligence and a proximate cause of the accident, but again the jury failed to find this as the sole cause.

The jury further found that Railroad, prior to the accident, undertook maintenance work in the area where Perry fell and that this maintenance work caused the surface in the area to fall into an uneven condition prior to the accident. The jury failed to find that this was negligence.

Then came a cluster of issues—Nos. 27, 28 and 29—in which the jury found that after the Railroad undertook such maintenance work, they allowed the surface area where the plaintiff fell to remain in an uneven condition; that such conduct was negligence and a proximate cause of the injuries to H. W. Perry. They likewise found—Special Issue No. 33—that the negligence of the defendants was active.

In the judgment, the trial court provided "that the answers to Special Issues Nos. 27, 28 and 29 either should be set aside or their effect in any event was rendered nugatory by the answers to Special Issue No. 33; . . ."

■■■ Rice Mill contends that there was ample evidence to support the jury's answers to Special Issues Nos. 27, 28 and 29. The trial court was authorized to set aside these answers only if there was no evidence to support the findings. Rule 301, Texas Rules of Civil Procedure. In this quest, we consider only the evidence most favorable to appellant, disregarding all conflicts and indulging in all inferences in favor of the verdict. Texas & Pacific Railway Company v. McCleery, 418 S.W.2d 494 (Tex. Sup.1967); Worth Tool & Die Co. v. Atlantis Electronics Corp., 398 S.W.2d 656 (Tex.Civ.App., Dallas, 1965, no writ).

The witness Rehorvic, who had worked for Rice Mill since June, 1955, testified that during that period of time and prior to 1966 the Railroad had done work on, maintained, and done construction work on the side tracks involved, as shown by the following testimony:

"A. . . . There was quite a bit of work done—I don't know—the tracks were, I believe, completely removed at one time when the City come in and put a sewer line under these tracks, and the Southern Pacific removed the tracks and come in and put ballasts and raised the tracks after this time."

The following questions and answers were elucidated:

"Q. All right. Now, did they do other maintenance work around the tracks?

"A. Yes, sir. At any time the tracks needed leveling they would come in and level them.

"Q. Okay. Now, in about 1966, I will ask you to tell us what was the condition of the area, the surface area, around those SP tracks out there.

"A. As far as the surface area around the tracks, there was quite a few low spots in the tracks and between the tracks.

"Q. Now how had this occurred?

"A. This had occurred from the settling after the Railroad had put the ballasts and had leveled the tracks, after the sewer line had been laid.

"Q. Okay. And this settling had taken place over a period of time, I suppose?

"A. Yes, sir, it did.

"Q. Would you say that in 1966, we will say about November—would you say that there was some uneven and some sloping and some low spots?

"A. Yes, sir. . . . There was quite a few low spots in the tracks, on the tracks, and between the tracks at this time, and this was a result of settling after the work was done— . . . I would say that the low spots were caused by the settling of the ballasts and all that was put in.

\* \* \* \* \* \*

"A. It was our Mill's understanding that the Railroads were to maintain the surface around the tracks.

\* \* \* \* \* \*

"Q. Henry, what has been the general practice insofar as the Rice Mill was concerned and insofar as the maintenance of these SP tracks out there was concerned?

"A. Well, all the practice at the Mill has always been that the Railroad keep the tracks up at all times."

The witness Stine testified, "The Railroad Company done all the maintaining on those tracks." He was asked the following questions and gave the indicated responses:

"A. Well, the reason I told him that, ever since we have owned the Mill the Railroad has been maintaining it, changing the ties, raising it, or putting ballasts or whatever had to be done at no cost to us on it.

\* \* \* \* \* \*

"Q. Is that what you told us this morning that you did in 1966, that you maintained that area?

"A. I didn't say that I maintained the trackage part—the Railroad."

The evidence showed that there were two tracks alongside the Rice Mill. Exact distances were not given but the inside track was so close that a truck could not get between a spotted car and the building. Neither is there any testimony revealing the

width between the two tracks. Mr. Perry testified as follows:

"Q. All right, sir. Now, Mr. Perry, on November 1, 1966, the day of this occurrence, you say you got in there some time around twelve or one o'clock?

"A. Yes, sir.

"Q. Tell the Jury in your own words exactly what happened to you, please, sir.

"A. Well, as we come in with the cars I got off the engine about—between the division of those buildings there—I got off the engine to go across, and I would step from one side to the other to try to miss the water, as you do, walking along there, and I started *in through over the last track in through*, well, I— (emphasis supplied)

"Q. Now, the last track, now—

"A. I mean the one next to the building, somewhere in through there—

"Q. The last spotting track you've got there?

"A. Yes, sir, that's right, the spotting track, the one next to the building.

"Q. All right.

"A. *Between these tracks, in that area*, well, I hung my toe on a band, or a wire, or something, I don't know just what it was, but it was something that grabbed my foot, and my other one slipped, and I landed in the bottom part of this building, this concrete building, concrete wall. (emphasis supplied)

"Q. What did your foot slip on?

"A. Well, I'd say the rice, mud, and all the accumulations of the stuff that was in there—I don't know.

\* \* \* \* \* \*

"Q. Describe how your foot felt, the one that you hung. Tell us what happened.

"A. Well, *as I was stepping across*, one of my feet hung, and it held me as I started to go forward, and the other one slipped on something. (emphasis supplied)

"Q. What did it feel like had hung your foot?

"A. Well, it felt like a band, or a wire, or something of that sort, that actually would give a little.

"Q. You were further over than the rail, then?

"A. I think so, yes, sir.

\* \* \* \* \* \*

"Q. Come up here to the rail, please, just a minute (speaking of Jury rail)—point out to the Jury, Mr. Perry, and turn around so that they can all see you—now, take your index finger, and I will hold the picture, and you point out where there were holes and debris accumulated at the time that you fell there.

"A. Well, you see, these two tracks where we run—between the two tracks—well, all in this area, in fact, the whole area, practically."

Perry's deposition, taken earlier by Rice Mill, was admitted in evidence containing the following:

"A. I was coming across here where I could get over here down to that building.

"Q. Were you between the tracks or were you up against the building?

"A. What do you mean?

"Q. Well, the tracks go alongside the building.

"A. Sure, this is your tracks here.

"Q. Yes, sir. Well, had you gotten out from between the tracks when you fell?

"A. I couldn't say for sure whether I was over the track when I hung my foot, exactly. I don't know exactly."

In view of the above evidence, we conclude that there was evidence before the jury (1) that the track area was maintained by Railroad; (2) that in such work Railroad allowed the area to remain uneven; and (3) that Mr. Perry fell in this area.

But, says Railroad, the jury's finding that Rice Mill's negligence was "Active" (Issue No. 33), gives them the right of indemnity under common law. The parties attempted to set forth their responsibilities in writing which we have quoted earlier in this opinion. They agreed that any liability arising from concurring negligence would be borne equally. There is no differentiation as to "kind" of negligence. In such situations, the written agreement controls. Booth-Kelly Lumber Co. v. Southern Pacific Co. (9th Cir. 1950), 183 F.2d 902; Ealand v. Gulf, Colorado & Santa Fe Railroad Co., 411 S.W.2d 591 (Tex.Civ.App., Beaumont, 1967, no writ).

We do not feel warranted in writing into this contract degrees of negligence as regard to "active" or "passive". When the parties use the term "negligence" with no qualification, it is to be assumed they mean all shades of negligence.

The judgment of the trial court is reversed and judgment is rendered that Southern Pacific Company take nothing of and from Orange Rice Milling Company.

Reversed and rendered.

KEITH, J., not participating.