Jack M. WEBB, as Special Deputy Receiver Under Contract to the Texas Commissioner of Insurance as Permanent Receiver of Employers Casualty Company and Palmer Steel Supplies, Inc., Appellants,

v.

LAWSON–AVILA CONSTRUCTION, INC. and American General Fire & Casualty Company, Appellees.

No. 04–93–00707–CV.

Court of Appeals of Texas, San Antonio.

Oct. 18, 1995.

Rehearing Overruled Nov. 15, 1995.

Christopher Fuller, Jane M.N. Webre, Scott, Douglass, Luton & McConnico, L.L.P., Austin, A. Peter Thaddeus, Jr., Law Offices of Peter Thaddeus, I.C., McAllen, for appellants.

Linda M. Walthall, Jo Chris G. Lopez, Shaddox, Compere, Walraven & Good, P.C., San Antonio, for appellees.

Before CHAPA, C.J., and RICKHOFF, and STONE, JJ.

## OPINION

STONE, Justice.

This appeal involves an indemnity clause in a contract entered into by a general contrac-

tor, Lawson–Avila, and a sub-contractor, Palmer Steel Supplies. The trial court rendered judgment declaring Lawson–Avila was entitled to indemnification from Palmer Steel and Employers Casualty Company for the damages assessed against Lawson–Avila in a judgment previously upheld by this court in *Lawson–Avila Construction, Inc. v. Stoutamire,* 791 S.W.2d 584 (Tex.App.—San Antonio 1990, writ dism'd). The main issues to be addressed by this court are:

1) Whether an indemnitee is entitled to contractual indemnification for exemplary damages assessed as the consequence of its own gross negligence where the indemnity contract specifically expresses an obligation to indemnify the indemnitee for its own negligence, but is silent about gross negligence.

2) Whether Lawson–Avila as a general contractor was a third-party beneficiary of the insurance contract between Palmer Steel and its insurer, Employers Casualty Company, thereby giving rise to *Stowers* duties between Employers and Lawson–Avila.

We hold that the indemnification clause in question obligated Palmer Steel to indemnify Lawson–Avila for damages arising from Lawson–Avila's own gross negligence. In light of this holding, we do not reach the second issue.

## Facts

Lawson–Avila as the general contractor contracted with Palmer Steel to provide steel for the building of Smithson Valley High School. During the construction, a crane lifting steel joists tipped over and dropped its load, resulting in one injury and one fatality. The families of the injured and the deceased filed suit (the *Stoutamire* litigation) against Lawson–Avila and Capital Rentals, a subcontractor. Palmer Steel was immune from suit due to the worker's compensation statute in effect at the time. The jury found both Capital Rentals and Lawson–Avila to be grossly negligent. Actual damages in excess of $500,000.00, and exemplary damages in the amount of $1,500,000.00, were assessed against Lawson–Avila.

Based upon an indemnity provision in the sub-contract executed between Lawson–Avila and Palmer Steel, Palmer Steel's insurer, Employers Casualty Company, paid the actual damage award assessed against Lawson–Avila. Employers refused to pay the punitive damage award assessed against Lawson–Avila, so that award was paid by Lawson–Avila's insurer, American General Fire and Casualty Company. American General and Lawson–Avila then filed the instant action claiming the indemnity contract required Palmer Steel to indemnify Lawson–Avila for its own gross negligence, and that Employers as Palmer Steel's insurer, was thus obligated to pay on Palmer Steel's behalf. Lawson–Avila also presented tort theories of recovery based upon its claim that it was a third party beneficiary of the insurance contract between Palmer Steel and Employers. Palmer Steel and Employers responded that while the contract required them to cover Lawson–Avila's *negligence,* it did not specifically provide that Palmer Steel was obligated to indemnify Lawson–Avila for Lawson–Avila's own *gross* negligence.

All parties filed motions for summary judgment. The trial court granted a partial summary judgment in favor of Lawson–Avila and American General on the breach of contract issue, and submitted appellees' tort theories to a jury. Following a jury verdict in favor of appellees, the court entered a final judgment granting recovery of actual damages and attorneys fees to Lawson–Avila and American General.

## Standard of Review

When both parties file motions for summary judgment, the proper disposition is for the appellate court to render judgment for the party whose motion should have been granted. *Members Mutual Ins. Co. v. Hermann Hosp.,* 664 S.W.2d 325, 328 (Tex.1984). A court is limited to those grounds expressly set forth before the trial court in the summary judgment motions to determine whether or not the summary judgment was properly granted. *McConnell v. Southside School Dist.,* 858 S.W.2d 337, 343 (Tex.1993). When summary judgment is sought in a contract dispute, if neither party alleges that the con-

tract is ambiguous, its construction is a question of law for the courts. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). In this situation, the courts will give effect to the intention of the parties as expressed or as is apparent in the writing. *Id.*

## Contract Language

The contract between Lawson–Avila and Palmer Steel imposed two duties on Palmer Steel relevant to this appeal: (1) the duty to carry and pay for liability insurance, and (2) the duty to indemnify Lawson–Avila. The contract specifically provides:

12. The Subcontractor [Palmer Steel] shall carry and pay for ... (2) public liability insurance consisting of both bodily injury and property damage coverage and including contractual liability coverage. All of said policies shall be in a sum and with limits and companies acceptable to Contractor [Lawson–Avila]. The Subcontractor shall furnish Contractor with copies of said policies or with certificates showing names of carriers, numbers of the policies and expirations dates. Upon request Subcontractor agrees to defend at its own cost and *to indemnify and hold harmless the Contractor and its agents and employees from any and all liability, damages,* losses, claims and expenses howsoever caused resulting directly or indirectly from or connected with the performance of this agreement, *irrespective of whether such liability, damages, losses, claims and/or expenses are actually or allegedly, caused wholly or in part through the negligence of Contractor or any of its agents, employees or other Subcontractors.*

## The Express Negligence Doctrine

■ In their first two points of error Palmer and Employers contend that as a matter of law the indemnity provision of the subcontract did not obligate Palmer to indemnify Lawson–Avila for damages caused by Lawson–Avila's own *gross* negligence. Palmer and Employers thus claim the trial court erred both in granting appellees' mo-

tion for summary judgment, and in failing to grant appellants' motions for summary judgment. Appellants contend they are not required to indemnify appellees because of the "express negligence doctrine," which provides that parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms. *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 708 (Tex.1987). Under this doctrine, the intent of the parties must be specifically stated within the four corners of the contract. *Crown Cent. Petroleum Corp. v. Jennings,* 727 S.W.2d 739, 741 (Tex.App.— Houston [14th Dist.] 1987, no writ).

When construing indemnification agreements, courts have often held the agreements unenforceable because negligence was not mentioned, or the extent of coverage was not specified. In *Gulf Coast Masonry, Inc. v. Owens–Illinois, Inc.,* 739 S.W.2d 239 (Tex. 1987), an indemnity agreement was held not to comply with the express negligence doctrine test when the contractor agreed to indemnify the owner for losses "arising out of or in any way connected with or attributable to the performance of non-performance of work hereunder by contractor...." *Id.* at 240. Likewise, in *Monsanto Co. v. Owens– Corning Fiberglas,* 764 S.W.2d 293, 295 (Tex. App.—Houston [1st Dist.] 1988, no writ), the term "negligence" was not found anywhere in the agreement, leading the court to conclude that the indemnity agreement did not satisfy the express negligence test.

The indemnity provision in *Ethyl* made no reference to the indemnitee's negligence, but specifically referred to "any loss ... as a result of operations growing out of the performance of this contract and caused by the negligence or carelessness of Contractor [indemnitor]...." The court rejected the argument that an indemnity agreement against "any loss" expressed an intent by the indemnitor to indemnify the indemnitee against the consequences of its own negligence. *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d at 708. The present case differs from *Ethyl* in that appellants expressly agreed to indemnify against Lawson–Avila's negligence. The question is whether this covers *gross* negligence as well.

The question of whether a contract of indemnity can protect an indemnitee from the consequences of his own gross negligence was addressed in *Crown Cent. Petroleum Corp. v. Jennings,* 727 S.W.2d 739 (Tex. App.—Houston [1st Dist.] 1987, no writ). In *Crown* the agreement specifically excepted the indemnitee's *sole negligence* from indemnity by the indemnitor. The indemnitee argued that the agreement required indemnification of punitive damages based on indemnitee's *sole gross negligence* because of the all encompassing language "any and all claims ... damages, and expenses, of every kind and character." The court rejected that argument and said that since the parties specifically excluded sole negligence, it logically followed that they intended to exclude sole gross negligence. *Crown Cent. Petroleum Corp. v. Jennings,* 727 S.W.2d at 742. *See also Singleton v. Crown Cent. Petroleum Corp.,* 729 S.W.2d 690, 691 (Tex.1987) (agreement to indemnify for any and all losses arising in connection with the work to be performed, excepting only claims resulting from owner's sole negligence, does not satisfy the express negligence doctrine). The instant case differs from the *Crown* cases because the language of the contract governs what is *included* in the coverage rather than what is *excluded.*

■ The parties specifically included in the contract a provision which obligates Palmer Steel to indemnify Lawson–Avila for the consequences of its own negligence. When the parties to an agreement use the term "negligence" it is assumed they mean all shades of negligence. *See Orange Rice Milling Co. v. Southern Pacific Co.,* 479 S.W.2d 725, 729 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.). As this court has previously noted in a different context, "no exact line can be drawn between negligence and gross negligence. The difference between the two forms of negligence is one of degree rather than kind." *Newman v. Tropical Visions, Inc.,* 891 S.W.2d 713, 721 (Tex. App.—San Antonio 1994, writ denied) (citations omitted).

The issue of degrees of negligence in indemnity agreements was addressed by the Supreme Court in *Atlantic Richfield Co. v. Petroleum Personnel, Inc.,* 768 S.W.2d 724 (Tex.1989). The court in *Atlantic Richfield* reviewed an indemnity provision in which the contractor agreed to indemnify the owner for damages arising from the work performed, including any negligent act or omission of the owner. The contractor argued that the provision was deficient because it did not differentiate between degrees of negligence. The court rejected the argument and held the language was sufficient to evidence the parties' intent to indemnify the owner for its own negligence. *Id.* at 726. Although the *Atlantic Richfield* opinion offers some guidance in this case, it is not dispositive because the gross negligence issue specifically was not addressed in that case. *Id.* at 726, n. 2.

■ The indemnity agreement governs the parties' rights and obligations. As a general rule indemnity agreements are strictly construed in favor of the indemnitors. *Safeco Ins. v. Gaubert,* 829 S.W.2d 274 (Tex. App.—Dallas 1992, writ den'd). In the instant case, however, the agreement precludes such strict construction because the agreement specifically provides that in the event of a dispute over the meaning or application of the contract, it shall be construed "fairly and reasonably and neither more strongly for nor against either party." Applying a fair and reasonable meaning to the contract before us, we determine that when the parties used the term "negligence," they indicated their intent to indemnify Lawson–Avila from the consequences of all shades and degrees of its own negligence, including gross negligence.

## Public Policy Considerations of Indemnification for Gross Negligence

■ Appellants argue that indemnity for one's own gross negligence, in a non-insurance context, is violative of public policy. The Texas Supreme Court has specifically declined to rule on this point. *Atlantic Richfield Co. v. Petroleum Personnel, Inc.,* 768 S.W.2d at 726 n. 2. Nonetheless, Employers ask this court to hold that the indemnity provision, described by Employers as merely a small paragraph in a large contract, is void against public policy. While the indemnity provision is just one small paragraph in a

large contract, there is nothing in the record or in the law which would allow us to ignore its plain meaning. The record reveals nothing other than an arm's length transaction between two business entities, and we must fairly and reasonably interpret the contract.

In support of its construction of the indemnity provision, Lawson–Avila relies on insurance cases which have held that payment of punitive damages by an insurance company is *not* against public policy. *American Home Assur. Co. v. Safway Steel Products Co., Inc., A Div. of Figgie Intern., Inc.,* 743 S.W.2d 693, 703 (Tex.App.—Austin 1987, writ denied); *Home Indemnity Co. v. Tyler,* 522 S.W.2d 594, 597 (Tex.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.); *Dairyland County Mutual Ins. Co. v. Wallgren,* 477 S.W.2d 341, 343 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n.r.e.). We recognize that the *Crown* court said cases holding that insurance contracts can allow coverage of punitive damages are "inapposite" to construction contract cases because insurance cases involve different rules of construction and different policy considerations. *Crown Cent. Petroleum Corp. v. Jennings,* 727 S.W.2d at 741. We decline to follow *Crown* in the instant case because the rules of construction ordinarily applicable to indemnity agreements do not apply here. As noted previously, the contract at issue contains a paragraph specifically eliminating any construction rules that would favor one party over another. We do not join the *Crown* court in condemning contractual agreements that provide indemnification for gross negligence for the additional reason that we believe this is a matter better left to the Legislature or the ruling of our Supreme Court. *Cf. B–F–W Constr. Co., Inc. v. Garza,* 748 S.W.2d 611, 614 (Tex.App.—Fort Worth 1988, no writ) (declining to pass on alleged public policy violation of indemnity agreement). Points of error one and two are overruled.

**Third Party Beneficiary Status**

 Lawson–Avila contends it is a "third-party beneficiary" of the insurance contract between Palmer Steel and Employers. This claimed status as a third-party beneficiary forms the basis of the tort theories of recovery advanced by appellees. All parties agree that the tort theories are independent grounds of recovery alternative to the contractual claim. Since we have held that the indemnity agreement provides indemnity for Lawson–Avila's own gross negligence, thereby supporting the trial court's judgment, we need not address the alternative matters raised in appellants' remaining points of error.

**Conclusion**

The indemnity provision in the sub-contract between Lawson–Avila and Palmer Steel evidences an intent to indemnify Lawson–Avila for damages caused by its own gross negligence. Accordingly, the trial court properly entered judgment in favor of Lawson–Avila and its insurer, American General. We express no opinion on the propriety in a non-insurance context, of contractual provisions that allow a party to shift the burden of its own gross negligence to another party to the contract. The judgment of the trial court is in all things affirmed.

CHAPA, Chief Justice, concurring.

I concur with the majority opinion, but respectfully write to point out the strange similarities of the dissent here with my dissenting opinion in *Newman v. Tropical Visions, Inc.,* 891 S.W.2d 713 (Tex.App.—San Antonio 1994, writ denied). What is strange is the fact that the same author of the dissent here also authored the majority in *Newman,* which was in obvious disagreement with my dissent. It would therefore appear that the resulting inconsistency lends credibility to my dissent in *Newman.*

*Newman* concerned the death of Jean Newman while she was learning to scuba dive. The relevant issue was whether a release she executed relieving Tropical Visions, Inc., from "all liability whatsoever for personal injury, property damage or wrongful death caused by negligence," *id.* at 716, also included a release of all liability for "gross negligence" as a matter of law.

The majority opinion in *Newman,* authored by the same author of the dissent here, concluded that negligence and gross negligence were "not separable," and that

the only difference between the two was "one of degree rather than kind." *Id.* at 722, 721. In contrast, my dissent in *Newman* cited *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21 (Tex.1994), to distinguish between negligence and gross negligence and concluded that public policy prevented the waiver of acts of gross negligence because

> a provider of services to the public should not be able to cause the death of a patron by an act or omission committed with a conscious indifference to that patron's safety with absolute impunity. *See* TEX.CONST. art. XVI, § 26 (person, corporation or company is liable for exemplary damages for homicide committed through wilful act, omission, or gross negligence).

*Newman,* 891 S.W.2d at 725–26.

Ironically, however, the author of the majority in *Newman* now dissents in the instant case, citing *Transportation Ins. Co. v. Moriel* as authority of "distinct differences between negligence and gross negligence," and holds that since the indemnity contract here "does not mention 'gross negligence' specifically, we should not hold, as a matter of law, that the contract covers it." Thus, the majority opinion in *Newman* and the dissenting opinion in the instant case would establish two conflicting and thus unfair rules that violate the "goose/gander" principle of universal law. One rule would permit an ordinary citizen to waive liability for both "negligence" and "gross negligence" by simply waiving liability for the "negligence" of a public provider, while at the same time paying for the privilege. The other rule would protect an insurance provider from liability for losses caused by "gross negligence" when contracting at arm's length for compensation to indemnify a customer for losses caused by the customer's "negligence." This obvious inconsistency is aggravated by public policy implications which exist to protect the public at large rather than business entities which operate at a profit. Where the public at large is ill equipped to assume responsibility for the irresponsible acts of others, insurance businesses exist for the sole purpose of insuring at a profit against losses caused by the irresponsible acts of others. It is therefore clear where public policy should be concentrated.

RICKHOFF, Justice, dissenting.

Because "the scriveners of indemnity agreements have devised novel ways of writing provisions which fail to expressly state the true intent of those provisions," we must adhere ever so closely to the express negligence doctrine. *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 707 (Tex.1987). If *Ethyl* requires an express statement of ordinary negligence before supporting indemnification, we should similarly require an unambiguous statement that gross negligence is covered.

The majority cites our opinion in *Newman v. Tropical Visions,* Inc., 891 S.W.2d 713, 721 (Tex.App.—San Antonio 1994, writ denied), which I authored, to support the proposition that no exact line can be drawn between negligence and gross negligence. In *Newman,* the express negligence doctrine was not raised. Id. at 720. Furthermore, there are distinct differences between negligence and gross negligence, as illustrated by *Transportation Insurance Co. v. Moriel,* 879 S.W.2d 10, 21 (Tex.1994), and *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 326 (Tex.1993). If an indemnity contract does not mention "gross negligence" specifically, we should not hold, as a matter of law, that the contract covers it.

Respectfully, I dissent.