RLI INSURANCE COMPANY as Subrogee of Metropolitan Transit Authority of Harris County, Texas, Plaintiff,

v.

UNION PACIFIC RAILROAD, COMPANY Defendant.

No. CIVA H–06–617.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 1, 2006.

Jeffrey C. Arnold, Kisher Kanaris PC, Chicago, IL, Joseph Alan Callier, Callier & Garza, Houston, TX, Robert Dartanian Thomas, Thomas Hudson et al., Austin, TX, for Plaintiff.

John L. Hagan, James H. Hall, Jones Day, Houston, TX, for Defendant.

## ORDER

HITTNER, District Judge.

Pending before this Court is Defendant Union Pacific Railroad Company's Motion for Summary Judgment (Instrument No. 20). Having considered the motion, submissions, and applicable law, the Court determines that the motion should be granted.

## BACKGROUND

Plaintiff RLI Insurance Company ("RLI") brings this insurance subrogation action against Defendant Union Pacific Railroad Company ("Union Pacific"). RLI, seeks to recover insurance proceeds it paid to the Metropolitan Transit Authority of Harris County, Texas ("Metro") following an accident between a Metro light rail vehicle ("LRV") and a Union Pacific truck.[1]

In August 2001, Metro and Union Pacific entered into a five-year lease under which Metro leased Union Pacific property located in Houston, Texas, for the construction, maintenance, and operation of a test track for its LRVs. On January 23, 2004, Metro was operating a LRV on a test track located on the leased premises. As the LRV approached the intersection of Kirby Drive and Railroad Crossing #755612H, the LRV collided with the Union Pacific truck. The LRV was damaged in the collision and required repair. RLI paid to repair the damaged LRV. RLI now seeks to recover the cost of the repairs and thus is a subrogee in this action, effectively standing in the shoes of Metro. RLI alleges that Union Pacific is liable for negligence, gross negligence, and negligence per se.

On August 25, 2006, Union Pacific moved for summary judgment, arguing that Metro waived its right of recovery and released the claims in the suit. In response, RLI avers that the release provision of the lease is not valid and is not enforceable under Texas law. RLI further argues that the facts and circumstances of the lawsuit are outside the scope of the lease.

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view the evidence in a light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir.1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to come "forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Ra-*

---

1. RLI insures Metro, and the accident constituted a loss covered under the insurance policy.

*dio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting FED. R. CIV. P. 56(e)).

A fact is "material" if its resolution is outcome determinative. *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir.1994). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir.1993) (citation omitted). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). Thus, the non-movant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir.1998). It is not the function of the court to search the record on the non-movant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n. 30 (5th Cir.1992).

## LAW AND ANALYSIS

Union Pacific asserts that the lease's release provision is valid and enforceable under Texas law so as to warrant summary judgment. On the other hand, RLI asserts that the release provision fails to provide RLI with fair notice as required by Texas law. Thus, the Court must determine the validity of the release provision. If the Court finds the provision valid and enforceable, then it must decide the effect and scope of the release provision on RLI's negligence claims.

### A. *Enforceability of the Lease's Release Provision under Texas Law*

■ Texas imposes fair notice requirements on pre-injury releases because such provisions involve an extraordinary shifting of risk. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508–09 (Tex.1993). A release that fails to satisfy the state's fair notice requirements is unenforceable as a matter of law. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex.2004). Fair notice requires that (1) a party seeking to enforce a release provision comply with the express negligence doctrine and (2) that the provision be conspicuous. *Id.*

■ The express negligence doctrine provides a party seeking to release potential claims against another party for the other party's negligence must express that intent in unambiguous terms within the four corners of the agreement. *Reyes*, 134 S.W.3d at 192. The conspicuousness requirement provides that the releasing language must be conspicuously written so that a reasonable person against whom it is to operate should notice it. *Reyes*, 134 S.W.3d at 192; *Dresser*, 853 S.W.2d at 508. However, Texas courts have consistently held that whether an agreement provides fair notice of a release provision is immaterial if the releaser had actual knowledge of the existence of the release provision. *Dresser*, 853 S.W.2d at 508 n. 2; *Cate v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex. 1990) (party who, prior to entering into

contract, has actual knowledge of its terms cannot escape enforcement of those terms on ground terms are inconspicuous); *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 20 S.W.3d 119, 126 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (holding indemnity agreement read by indemnitor conspicuous and rejecting indemnitor's argument that indemnitee must show that indemnitor actually noticed the indemnity language when reading agreement).

The relevant portion of the Lease in the instant case states:

Section 12. *RELEASE AND INDEMNITY*

A. As a material part of the consideration for this Lease, Lessee, to the extent it may lawfully do so, waives and releases any and all claims against Lessor for, and agrees to indemnify, defend and hold harmless Lessor, its affiliates, and its and their officers, agents and employees ("Indemnified Parties") from and against any loss damage, injury, liability, claim, demand, cost or expense (including, without limitation, attorney's fees and court costs), fine or penalty (collectively "Loss") incurred by any person (including, without limitation, Lessor, Lessee, or any employee of Lessor or Lessee) and arising from or related to (i) any use of the Premises by Lessee or any invitee or licensee of Lessee, (ii) any act or omission of Lessee, its officers, agents, employees, licensees or invitees, or (iii) any breach of the Lease by Lessee.

B. The foregoing release and indemnity shall apply, to the greatest extent allowed by Texas law, regardless of any negligence, misconduct of strict liability of any Indemnified Party, except that the indemnity, only, shall not apply to any Loss caused by the sole, active and direct negligence of any Indemnified Party if the Loss (i) was not occasioned by fire or other casualty, or (ii) was not occasioned by water, including, without limitation, water damage due to the position, location, construction or condition of any structures or other improvements or facilities of any Indemnified Party.

Union Pacific directs the Court to the release's provision that it "shall apply, to the greatest extent allowed by Texas law, *regardless of any negligence,* misconduct or strict liability *of any Indemnified party* . . . ." Thus, Union Pacific contends that Metro released "any negligence" claims against "any Indemnified Party," which would include Union Pacific. The Court concludes that the language "any negligence" expressly identifies Metro's intent to release Union Pacific from all liability for Union Pacific's negligence. *See Reyes,* 134 S.W.3d at 192. Accordingly, the Metro release provision meets the express negligence doctrine with respect to any negligence of Union Pacific. *See Atlantic Richfield Co. v. Petroleum Pers. Inc.*, 768 S.W.2d 724, 726 (Tex.1989) (finding a contractual indemnity that included "any negligent act of ARCO" satisfied the express negligence doctrine even though it did not differentiate between degrees of negligence).

RLI also contends Metro's release provision is invalid as to the remaining claims of gross negligence and negligence per se because the lease does not expressly mention either gross negligence or negligence per se. The Court disagrees because gross negligence is not a separate cause of action apart from negligence. *See Prati v.*

*New Prime, Inc.,* 949 S.W.2d 552, 557 (Tex.App.-Amarillo 1997, writ denied). Rather, the degree of negligence characterized as gross negligence is relevant only to a recovery of exemplary damages, which RLI is not seeking. *Riley v. Champion Int'l Corp.,* 973 F.Supp. 634, 641 (E.D.Tex. 1997). Likewise, negligence per se is not a cause of action separate and independent from a common law negligence cause of action. Instead, it is one method of proving the breach of duty required in any negligence cause of action.[2] *Zavala v. Trujillo,* 883 S.W.2d 242, 246 (Tex.App.-El Paso 1994, writ denied). Therefore, the Court concludes the release provision's reference to "any negligence" also meets the express negligence doctrine with respect to RLI's gross negligence and negligence per se claims.

■ Additionally, Union Pacific argues that Metro had actual knowledge of the release, rendering compliance with the fair notice requirement irrelevant. The Court notes that evidence that a party had read a contract constitutes evidence of actual knowledge of any indemnity provisions. *See Goodyear Tire and Rubber Co. v. Jefferson Constr.,* 565 S.W.2d 916, 919 (Tex. 1978), *overruled on other grounds, Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853

S.W.2d 505 (Tex.1993). In the instant case, Metro requested changes to the wording of the agreement, including the lease's release and indemnity provision. The requested changes are apparent on the agreement. Thus, Metro had actual knowledge of the release provision of the lease *Id.* Accordingly, the Court determines that the release provision is valid and enforceable under Texas law.[3] *See Reyes,* 134 S.W.3d at 192.

**B.  *Effect and Scope of the Release Provision***

■ RLI contends that even if the release provision is valid and enforceable, the accident is outside the scope of actions that Metro agreed to release in the lease. RLI argues that the lease includes only claims arising out of Metro's use or actions on the premises and does not release claims from the use or actions of Union Pacific. However, the lease provides that it is applicable to "any and all claims against Lessor" that "aris[e] from or [are] related to (i) any use of the Premises by Lessee . . . (ii) any act or omission of Lessee . . . or (iii) any breach of the Lease by Lessee." The phrase "arising from or related to" only requires "a causal connection or relation, which has been interpreted to mean

---

**2.** Negligence per se is the unexcused violation of a penal statute designed to protect the class of persons to which the injured party belongs, establishing negligence as a matter of law. *Ridgecrest Ret. & Healthcare v. Urban,* 135 S.W.3d 757, 762 (Tex.App.-Houston [1st Dist] 2004, pet. denied); BLACK'S LAW DICTIONARY 1063 (8th ed.2004).

**3.** The Court disagrees with RLI's argument that the release provision violates public policy because both parties to the agreement are established business entities that negotiated at arm's length and are of substantial equal bargaining positions. *See Fidelity & Deposit Co. of Maryland v. Conner,* 973 F.2d 1236,1241 (5th Cir.1992) (contracts can only be declared

unenforceable on public policy grounds in rare circumstances, and this narrow public policy exception must be applied cautiously); *Webb v. Lawson–Avila Constr.,* 911 S.W.2d 457, 460 (Tex.App.-San Antonio 1995, writ dism'd) (in arm's length transaction between two business entities, indemnity for gross negligence did not violate public policy); *Valero Energy Corp. v. M.W. Kellogg Constr. Co.,* 866 S.W.2d 252, 256 (Tex.App.-Corpus Christi 1993, pet. denied) (enforcement of indemnity for gross negligence does not offend public policy when parties are sophisticated and bargain from positions of substantially equal strength).

there is but for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex.2004) (citations omitted); *see Scottsdale Ins. Co. v. Texas Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir.1999) (phrase "arising out of" means that a "claim need only bear an incidental relationship to the described conduct . . ."). In the instant case, Metro's use of the premises together with its acts of testing the LRV on the leased premises bears an incidental relationship to the cause of action in this case. In addition, but for Metro's use of the leased premises and acts of testing the LRV on the leased premises, the accident would not have occurred. This causal connection is a sufficient nexus to establish the accident is within the scope of the lease. *See Utica,* 141 S.W.3d at 203.

As discussed above, the release provision effectively gave fair notice to Metro of Union Pacific's intent to be released from any negligence claims, including gross negligence and negligence per se. Therefore, summary judgment in favor of Union Pacific is appropriate. Accordingly, the Court hereby

ORDERS that Defendant Union Pacific's Motion for Summary Judgment (Instrument No. 20) is GRANTED.