NUMBER 13-06-186-CV



COURT OF APPEALS
 


THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


EL PASO SOUTH TEXAS, L.P.

F/K/A COASTAL LIQUIDS PARTNERS, L.P., Appellant,


v.


BAY, LTD., Appellee.

 


On appeal from the 347th District Court


of Nueces County, Texas.

 

 

MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Garza
 

 This is a summary judgment case in which appellant, El Paso South Texas, L.P.
f/k/a Coastal Liquid Partners, L.P. ("El Paso"), seeks indemnification from appellee, Bay,
Ltd. ("Bay"), for $10,870.25 owed to subcontractor, Loyd Adams d/b/a Loyd's of Kern
Painting ("Adams") for materials and labor provided on a painting job. From a judgment
of the trial court granting Bay's motion for summary judgment, El Paso has perfected its
appeal to this Court. By two issues, El Paso contends that the judgment of the trial court
should be reversed because: (1) the trial court erred in applying the "fair notice"
requirements in determining Bay's contractual obligation to indemnify El Paso from a
subcontractor's claim of non-payment and in determining if indemnification applied; and
(2) El Paso's assertion of the "waiver of liens" provision in the prime contract in its motion
for summary judgment against Adams does not constitute an admission that Bay complied
with the contract. We reverse the judgment of the trial court and remand for proceedings
consistent with this opinion.I. Factual and Procedural Background

 On October 9, 2000, El Paso and Bay entered into a contract ("prime contract")
whereby Bay agreed to engineer and serve as the general contractor for the construction
of a storage tank in Edinburg, Texas. Bay subcontracted with Adams to provide the
materials and labor necessary to paint the exterior of the storage tank. Bay and Adams
operated under a Master Service Agreement signed on December 22, 1997.

 The suit involves multiple causes of action-counterclaims and cross-claims-between Bay, El Paso, and Adams. (1) The underlying dispute arose when Adams's
work was deemed unsatisfactory and Adams subsequently walked off the job. In
December 2001, Bay filed suit in the 347th District Court of Nueces County against Adams
seeking damages for breach of contract and breach of express warranty for failing to finish
the painting job in a satisfactory manner. (2) On August 20, 2002, Adams filed suit against
El Paso in the 93rd Judicial District Court of Hidalgo County alleging that El Paso owed him
$10,870.25 for labor and materials already provided to the painting job. Additionally,
Adams asserted a statutory lien against El Paso's storage tank in Edinburg. 

 Due to the pending suit in Nueces County, El Paso filed a motion to abate the
Hidalgo County suit, which the Hidalgo County district court granted. The Hidalgo County
district court ordered El Paso to place into the court's registry the sum of $15,963.90, which
included the $10,870.25 owed to Adams and Adams's attorney's fees and costs. El Paso
complied with the Hidalgo County district court's order.

 On May 8, 2003, Adams filed a counterclaim against Bay and a third-party petition
against El Paso in the 347th District Court of Nueces County seeking payment for unpaid
invoices associated with work performed under the subcontract with Bay. Subsequently,
on July 2, 2003, Adams filed a motion for summary judgment against El Paso in Nueces
County. (3) In addition, on April 19, 2004, Adams filed a second amended counterclaim
against Bay and third-party petition against El Paso again seeking payment for labor and
materials provided to the painting job. 

 On September 2, 2005, El Paso filed counterclaims against Bay and Adams. On
December 11, 2005, Bay filed a motion for summary judgment against El Paso in Nueces
County. (4) El Paso filed second amended counterclaims against Bay and Adams on
December 27, 2005. In its counterclaims, El Paso sought indemnification from Bay for the
$10,870.25 owed to Adams pursuant to the prime contract. On January 13, 2006, the trial
court granted Bay's motion for summary judgment with regard to El Paso's claims of
indemnification. (5) On January 19, 2006, the trial court granted Bay's motion to sever El
Paso's counterclaims against it to establish a final judgment. See Tex. R. Civ. P. 301; see
also Pilgrim Enters., Inc. v. Maryland Cas. Co., 24 S.W.3d 488, 492 (Tex. App.-Houston
[1st Dist.] 2000, no pet.) ("[A] severance is a proper means of rendering an otherwise
interlocutory appeal final when some parties and issues still remain.") (emphasis in
original). On February 2, 2006, El Paso moved for a new trial. The trial court did not rule
on El Paso's motion for a new trial, and it was, subsequently, overruled by operation of law. 
See Tex. R. App. P. 33.1(b). This appeal ensued. 

II. Standard of Review

 The function of summary judgment is to eliminate patently unmeritorious claims and
defenses, not to deprive litigants of the right to a trial. Tex. Dep't of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 228 (Tex. 2004) (citing Casso v. Brand, 776 S.W.2d 551, 556
(Tex. 1989)); Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex. App.-Corpus Christi 2003, no
pet.). We review de novo a trial court's grant or denial of a traditional motion for summary
judgment. Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing
Schneider Nat'l Carriers, Inc. v. Bates, 147 S.W.3d 264, 290 n.137 (Tex. 2004)); Alaniz,
105 S.W.3d at 345. 

 Under a traditional motion for summary judgment, the movant must establish that
no material fact issue exists and that it is entitled to judgment as a matter of law. Tex. R.
Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Alaniz,
105 S.W.3d at 345; Mowbray v. Avery, 76 S.W.3d 663, 690 (Tex. App.-Corpus Christi
2002, pet. denied). A party moving for traditional summary judgment must conclusively
negate at least one essential element of each of the non-moving party's causes of action
or conclusively establish each element of an affirmative defense. Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997). Evidence is conclusive only if reasonable
people could not differ in their conclusions. City of Keller v. Wilson, 168 S.W.3d 802, 816
(Tex. 2005). After the movant produces evidence sufficient to show it is entitled to
summary judgment, the nonmovant must then present evidence raising a fact issue. See
Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). If the nonmovant does so, summary
judgment is precluded. See Clarendon Nat'l Ins. Co. v. Thompson, 199 S.W.3d 482, 486-87 (Tex. App.-Houston [1st Dist.] 2006, no pet.). 

III. Analysis

1. Fair Notice Requirements

 In its first issue, El Paso asserts that the trial court improperly granted Bay's motion
for summary judgment because the trial court erred "in applying the 'fair notice'
requirements to render unenforceable Bay's contractual obligation to indemnify El Paso
from a subcontractor's [Adams's] claim of non-payment." On appeal, Bay concedes that
the fair notice requirements do not apply in a non-negligent cause of action. See Dresser
Indus., Inc. v. Page Petroleum, 853 S.W.2d 505, 508 n.1 (Tex. 1993) ("Today's opinion
applies the fair notice requirements to indemnity agreements and releases only when such
exculpatory agreements are utilized to relieve a party of liability for its own negligence in
advance."). It is undisputed that this is a breach of contract matter pertaining to
indemnification for a subcontractor's claim for non-payment, a non-negligent cause of
action. See Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 387 (Tex. 1997); OXY USA, Inc. v.
Sw. Energy Prod. Co., 161 S.W.3d 277, 282 (Tex. App.-Corpus Christi 2005, pet. denied);
DDD Energy, Inc. v. Veritas DGC Land, Inc., 60 S.W.3d 880, 883 (Tex. App.-Houston
[14th Dist.] 2001, no pet.). Accordingly, we, too, conclude that the fair notice requirements
do not apply in this matter, and we need not address "fair notice." We must, however,
analyze the prime contract as it pertains to indemnification. See Fisk Elec. Co. v.
Constructors & Assoc., Inc., 888 S.W.2d 813, 814 (Tex. 1994) (the question of whether
indemnity exists is a rule of contract interpretation and should be determined by the court
as a matter of law); see also Dresser, 853 S.W.2d at 509. 

2. Indemnification and the prime contract

 El Paso argues that the prime contract, specifically section 14.1, entitles it to
indemnification from Bay for Adams's unpaid invoices. Conversely, Bay asserts that a
strict construction of section 14.1 makes it clear that it does not apply to Adams's non-payment claim. 

 The interpretation of an unambiguous contract is a question of law for the court to
decide. Am. Std. v. Brownsville Indep. Sch. Dist., 196 S.W.3d 774, 781 (Tex. 2006) (citing 
J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003)); Columbia Gas
Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996); Barrand, Inc.,
et al. v. Whataburger, Inc., 214 S.W.3d 122, 129 (Tex. App.-Corpus Christi 2006, pet.
denied). Contracts that are not deemed to be ambiguous are enforced as written. See,
e.g., Heritage Res., Inc. v. Nationsbank, 939 S.W.2d 118, 121 (Tex. 1996). If a written
contract is worded so that it can be given a definite or certain legal meaning, then it is
unambiguous. Gulf Ins. Co. v. Burns Motors, 22 S.W.3d 417, 423 (Tex. 2000); see Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); Cook Composites, Inc. v. Westlake Styrene
Corp., 15 S.W.3d 124, 131 (Tex. App.-Houston [14th Dist.] 2000, pet. dism'd). 

 We construe indemnity agreements under normal rules of contract construction. 
Gulf Ins. Co., 22 S.W.3d at 424. As a general rule, indemnity agreements are strictly
construed in favor of the indemnitors. Webb v. Lawson-Avila Constr., Inc., 911 S.W.2d
457, 461 (Tex. App.-San Antonio 1995, writ dism'd) (citing Safeco Ins. Co. of Am. v.
Gaubert, 829 S.W.2d 274, 281 (Tex. App.-Dallas 1992, writ denied)). 

 Moreover, in construing a contract, we must ascertain and give effect to the parties'
intentions as expressed in the document. J.M. Davidson, Inc., 128 S.W.3d at 229; Nat'l
Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995) (per curiam). We
consider the entire writing and attempt to harmonize and give effect to all the provisions
of the contract by analyzing the provisions with reference to the whole agreement. J.M.
Davidson, Inc., 128 S.W.3d at 229; Sun Oil Co. v. Madeley, 626 S.W.2d 726, 731 (Tex.
1981); Mescalero Energy, Inc. v. Underwriters Indem. Gen. Agency, Inc., 56 S.W.3d 313,
319 (Tex. App.-Houston [1st Dist.] 2001, pet. denied). Furthermore, we construe contracts
"from a utilitarian standpoint bearing in mind the particular business activity sought to be
served" and "will avoid when possible and proper a construction which is unreasonable,
inequitable, and oppressive." Reilly, 727 S.W.2d at 530; Hewlett-Packard Co. v.
Benchmark Elecs., Inc., 142 S.W.3d 554, 561 (Tex. App.-Houston [14th Dist.] 2004, pet.
denied).

 The prime contract in this case provides, in pertinent part:

 14.0 LIABILITY AND INDEMNITY

 

 14.1 Contractor [Bay] agrees to protect, defend, unconditionally indemnify
and hold Owner [El Paso], its employees, directors and officers, free and
harmless from and against any and all liability, losses, claims, liens,
demands, damages and causes of action of every kind and character,
including without limitation judgments, penalties, interest, court costs and any
legal fees incurred by the Owner in defense of same (including attorneys'
fees incurred in enforcing this indemnity), which Owner may at any time
suffer or sustain or become liable for by reason of any accidents, damages
or injuries either to person or property or both of Contractor, or of the
workmen of either party, or of any other parties or to the property of Owner,
in any manner arising from or connected with Work performed hereunder .
. . . Contractor further agrees to investigate, handle, respond to, provide
defense for and defend any claims or suits arising hereunder at its sole
expense and agrees to bear all costs and expenses related thereto.


 . . . .


 In reviewing the language provided by the prime contract, El Paso is entitled to
indemnification from Bay for the non-payment of Adams's claim. Specifically, the liability
and indemnity provision provides that "Contractor agrees to . . . unconditionally indemnify
and hold Owner . . . free and harmless from and against any and all liability, losses, claims,
liens, demands, damages and causes of action of every kind and character . . . ." 
(Emphasis added). Clearly, the aforementioned language is very broad and would
encompass Adams's non-payment claim.

 However, Bay urges this Court to strictly construe section 14.1, the liability and
indemnity provision of the prime contract, paying close attention to the following language: 

 

 Contractor [Bay] agrees to . . . unconditionally indemnify and hold Owner [El
Paso] . . . free and harmless from and against any and all liability, losses,
claims, liens, demands, damages and causes of action of every kind and
character . . . which Owner may at any time suffer or sustain or become
liable for by reason of any accidents, damages or injuries either to person or
property or both of Contractor, or of the workmen of either party, or of any
other parties or to the property of Owner, in any manner arising from or
connected with Work performed hereunder . . . .


(Emphasis added). Specifically, Bay contends that the emphasized portion of the liability
and indemnity provision modifies the prime contract language pertaining to "damages and
causes of action of every kind and character" and applies exclusively to "accidents,
damages or injuries" sustained by person or property. Bay further contends that the non-payment of Adams's claim does not constitute an accident, damage, or injuries to person
or property. We disagree.

 Contrary to Bay's assertions, Adams, subcontractor and workman for Bay, did suffer
damage to its property. The prime contract, however, does not contain a definition of
damage. In the absence of a statutory or contractual definition, we must look to the
common meaning of the word. See Tex. Educ. Agency v. Donna Indep. Sch. Dist., 221
S.W.3d 791, 795 (Tex. App.-Corpus Christi 2007, no pet.) (citing In re Tex. Dep't of Family
and Protective Servs., 210 S.W.3d 609, 612 (Tex. 2006)). Black's Law Dictionary defines
damage as "a pecuniary compensation or indemnity, which may be recovered in the courts
by any person who has suffered loss, detriment, or injury, whether to his person, property,
or rights, through the unlawful act or omission or negligence of another." Black's Law
Dictionary 389 (6th ed. 1990). The record reflects that Adams procured painting supplies
and commenced work on the painting job. The record further reflects that Adams allegedly
was not paid for supplies and labor provided to the painting job in the amount of
$10,870.25 thereby constituting loss or damage to Adams's property. Moreover, it is clear
that the amount owed to Adams arose solely from the painting job. Therefore, El Paso
would be entitled to indemnification from Bay because Adams's claim constitutes
"damages and causes of action of every kind and character . . . which Owner may . . .
become liable for by reason of . . . damages or injuries to person or property . . . of the
workman of either party, or of any other parties . . . in any manner arising from or
connected with Work performed hereunder . . . " that Bay agreed to "unconditionally
indemnify." See J.M. Davidson, Inc., 128 S.W.3d at 229; Nat'l Union Fire Ins. Co., 907
S.W.2d at 520. Accordingly, in strictly construing section 14.1 of the prime contract in favor
of the indemnitors, we conclude that El Paso is entitled to indemnification from Bay for the
damage Adams sustained to its property. See Gulf Ins. Co., 22 S.W.3d at 424; Webb, 911
S.W.2d at 461; Safeco Ins. Co., 829 S.W.2d at 281. We, therefore, sustain El Paso's first
issue on appeal. 

IV. Conclusion


 Having sustained El Paso's first issue, we need not address El Paso's remaining
issue. Tex. R. App. P. 47.1. Accordingly, we reverse the judgment of the trial court and
remand for proceedings consistent with this opinion.

 

 __________________________ 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 6th day of December, 2007.

1. Adams is not a party to this appeal.
2. The record does not contain a copy of Bay's original petition in the 347th District Court of Nueces
County. However, it is undisputed that Bay filed suit in the 347th District Court of Nueces County in December
2001.
3. The record does not contain an order from the trial court specifically granting or denying Adams's
motion for summary judgment filed on July 2, 2003. 
4. It is this motion that is the basis of this appeal. The record reflects that El Paso did not file a cross-motion for summary judgment pertaining to Bay's claims.
5. On February 13, 2006, El Paso filed a traditional motion for summary judgment on the third-party
claims filed by Adams with the Nueces County district court. In its motion for summary judgment, El Paso also
sought to invalidate the lien assessed by Adams. On March 20, 2006, the Nueces County district court
granted El Paso's motion for summary judgment against Adams and invalidated the statutory lien assessed
by Adams.